IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No.: 1:15-CV-227

| | |
|---|---|
| MIRIAM MARTINEZ SOLAIS, on behalf of herself and all others similarly situated, | ) ) ) ) |
| *Plaintiff,* | ) ) |
| vs. | ) ) ) |
| VESUVIO'S II PIZZA & GRILL, INC.; and GIOVANNI SCOTTI D'ABBUSCO | ) ) ) ) |
| *Defendants.* | ) ) |

**<u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION
FOR A PROTECTIVE ORDER TO ADDRESS DEFENDANTS' IMPROPER
COMMUNICATION WITH PUTATIVE CLASS MEMBERS</u>**

# CONTENTS

I.   INTRODUCTION ...................................................................................... 1

I.   FACTUAL BACKGROUND ................................................................. 2

II.  PROCEDURAL HISTORY ................................................................... 5

III. ARGUMENT ......................................................................................... 6

A. The FLSA Gives This Court Ample Authority to Protect Plaintiffs from
   Defendants' Unlawful and Egregious Conduct ......................................... 6

   1. Plaintiff's Requested Relief Is Necessary and Legally Appropriate to
      Restrain Defendants' Illegal, Threatening, and Coercive Communications ...... 8

   2. Declarants' Sworn Assertions of Specific Threats And Acts of
      Intimidation And Coercion Demonstrate An Urgent Need For Limitations
      on Defendants' Communications With Plaintiffs, Putative Plaintiffs, and
      Their Family Members .................................................................... 13

   3. The Proposed Protective Order Is Narrowly Tailored to Limit Defendants'
      Conduct Only to the Extent Necessary to Protect the Well-Being and
      Rights of Plaintiff, Opt-In Plaintiff, Putative Plaintiffs, and Their Families.... 16

B. Plaintiff's Proposed Restrictions on Discovery, Investigation, or Inquiry Into the
   Immigration Status of Plaintiff, Opt-In Plaintiff, Putative Plaintiffs, or Their
   Family Members Are Consistent with Case Law and Federal Policy and Enable
   Defendants to Engage in All Relevant and Necessary Discovery ......................... 18

C. Defendants Should Be Ordered to Produce the Names and Addresses of All
   Putative Plaintiffs So That Plaintiffs May Send a Corrective Notices Containing
   Information Concerning Putative Plaintiffs' Rights Under the Anti-Retaliation
   Provisions of the Fair Labor Standards Act ........................................... 21

IV.  CONCLUSION ..................................................................................... 23

# TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(S)**

*Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672 (N.D. Ga. 1999) .......................................... 16

*Adair v. EQT Prod. Co*., 2011 U.S. Dist. LEXIS 110512
    (W.D. Va. Sept. 28, 2011).............................................................................................. 10

*Baca v. Brother's Fried Chicken* 2009 U.S. Dist. LEXIS 42306
    (E.D. La. May 13, 2009) ................................................................................................ 20

*Bailey v. Gulf Coast Transportation, Inc.*, 280 F.3d 1333
    (11th Cir. 2002) ............................................................................................................... 7

*Balasanyan v. Nordstrom, Inc.*, 2012 U.S. Dist. LEXIS 30809
    (S.D. Ca. 2012)............................................................................................................... 12

*Barton v. Pantry, Inc.*, 2006 U.S. Dist. LEXIS 62989
    (M.D.N.C. Aug. 31, 2006) ............................................................................................ 11

*Belt v. Emcare Inc*., 299 F. Supp. 2d 664 (E.D. Tex. 2003)....................................... 11, 22

*Bobryk v. Durand Glass Mfg. Co.*, 2013 U.S. Dist. LEXIS 145758
    (D.N.J. Oct. 9, 2013) ..................................................................................................... 16

*Boudreaux v. Bantec, Inc.*, 366 F.Supp. 2d 425 (E.D. La. 2005)....................................... 7

*Centeno-Bernuy v. Perry*, 2009 U.S. Dist. LEXIS 103580
    (W.D.N.Y. July 14, 2009) ............................................................................................. 12

*Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 103 F. Supp. 2d 1180
    (N.D. Cal 2000).............................................................................................................. 21

*Darveau v. Detecon*, 515 F.3d 334 (4th Cir. 2008)............................................................. 7

*Erhardt v. Prudential Group, Inc.*, 629 F.2d 843 (2d Cir. 1980)..................................... 11

*Flores v. Dibenedeto*, 2013 U.S. Dist. LEXIS 145083
    (D. Conn. Oct. 8, 2013).................................................................................................. 20

*Gulf Oil v. Bernard*, 452 U.S. 89 (1981) .................................................................. 8, 9, 10

*Hampton Hardware v. Cotter & Co.*, 156 F.R.D. 630 (N.D. Tex. 1994) ........................ 17

*Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165 (1989) ............................................ 8, 10

*In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp. 2d 237
(S.D.N.Y. 2005) ........................................................................................... 11, 12

*Kleiner v. First Nat'l Bank*, 751 F.2d 1193 (11th Cir. 1985) ............................................ 17

*Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218 (S.D. Ala. 2008)............................... 11

*Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742 (4th Cir. 1998) ..................................... 16

*Marquez v. Erenler, Inc.,* 2013 U.S. Dist. LEXIS 138630
(S.D.N.Y. Sept. 20, 2013) ................................................................................ 20

*Marxe v. Jackson*, 833 F.2d 1121, 1126 (3d Cir. 1987) ...................................................... 7

*Mejia v. Bros. Petroleum, LLC.*, 2015 U.S. Dist. LEXIS 18180
(E.D. La. Feb. 13, 2015)................................................................................... 15

*Minor v. Bostwick Labs., Inc.*, 669 F.3d 428 (4th Cir. 2012).............................................. 7

*Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288 (1960) ........................................ 7

*Molyneux v. Securitas Sec. Servs. USA, Inc.*, 2011 U.S. Dist. LEXIS 156173
(S.D. Iowa July 8, 2011) .................................................................................. 12

*Montoya v. S.C.C.P. Painting Contrs., Inc.*, 530 F. Supp. 2d 746 (D. Md. 2008)............ 19

*Murton v. Measurecomp, LLC*, 2008 U.S. Dist. LEXIS 108085
(N.D. Ohio Dec. 2, 2008)................................................................................. 15

*n re School Asbestos Litigation*, 842 F.2d 671 (3d Cir. 1988) .......................................... 12

*Paulino v. Dollar Gen. Corp.*, 2013 U.S. Dist. LEXIS 59371
(N.D. W. Va. Apr. 25, 2013)............................................................................ 10

*Randolph v. PowerComm Constr., Inc.*, 41 F. Supp. 3d 461 (D. Md. 2014) .......... 9, 10, 16

*Recinos-Recinos v. Express Forestry, Inc.*, 2006 U.S. Dist. LEXIS 2510
(E.D. La. Jan. 23, 2006) ............................................................................... 12, 13

*Shores v. Publix Super Markets, Inc.*, 1996 U.S. Dist. LEXIS 22396
(M.D. Fla. 1996)............................................................................................... 22

iv

*Sure-Tan, Inc. v. Nat'l Labor Relations Bd.*, 467 U.S. 883 (1984) ................................... 21

*Williams v. Securitas Sec. Servs. USA, Inc*., 2011 U.S. Dist. LEXIS 75502
   (E.D. Pa. July 13, 2011) ............................................................................................ 12

**Statutes**

22 §§ U.S.C. 2072 ................................................................................................................ 8

22 §§ U.S.C. 2075 ................................................................................................................ 8

29 U.S. C. § 215(a)(3) ................................................................................................... 14, 21

29 U.S.C. § 216(b) .................................................................................................... *passim*

29 U.S.C. 215(b) .................................................................................................................. 7

**Rules**

Fed. R. Civ. P. 83 ............................................................................................................. 6, 8

# I. __INTRODUCTION__

Pursuant to 29 U.S.C. § 216(b), named plaintiff, on behalf of herself, opt-in, and putative plaintiffs (collectively, "Plaintiffs"), moves this Court for a protective order to enjoin and restrain Defendants from any further-initiated campaign of criminal arrests, threats of arrest, intimidation, or coercion intended to discourage named, opt-in, and putative plaintiffs from asserting claims under the Fair Labor Standards Act ("FLSA"). Plaintiffs specifically request that this Court issue a protective order Court enter a protective order.

Plaintiff's intentions in filing the instant motion are quite simple: To prevent Defendants from continuing to engage in egregious, unauthorized, and coercive conduct and communications with both plaintiffs and putative plaintiffs, and to enjoin them from engaging in any further *ex parte* communications to coerce Plaintiffs to withdraw from the action or deterring putative plaintiffs from participating in this action. Prior to the filing of this action, Defendants had threatened, harassed, and then ultimately ensured the criminal arrest of named Plaintiff Martinez Solais - all in an effort to thwart her right to pursue her claim for unpaid wages. Even after succeeding in having Plaintiff Martinez arrested, Defendants continued making similar threats against opt-in Plaintiff prior to his joining of this action.

For all of the above reasons, and because this Court is vested with supervisory authority over Defendant's communications with putative plaintiffs or class members, Plaintiff respectfully asks this Court to grant her Motion for Protective Order. Given the severity of the potential harm posed by Defendants' activities, Plaintiffs respectfully

request that the Court hear this Motion on an emergency basis and set an expedited briefing schedule.

## II.  FACTUAL BACKGROUND

On March 13, 2015, Named Plaintiff, Miriam Martinez Solais, filed this collective/class action. (Dkt. 1.) The suit alleged that during Plaintiffs' and putative plaintiffs' employment with Defendants, Defendants had systematically violated the FLSA and the NCWHA due to Defendants' practice of compensating its kitchen employees a non-fixed salary or hourly basis which did not adequately cover Plaintiffs' minimum wage and/or overtime wages. (*See* Dkt. 1, Compl. ¶ 30.) Pursuant to the opt-in collective action provisions of the FLSA, 29 U.S.C. § 216(b), so far, one additional plaintiff has opted into the action by filing his written consent-to-sue form, thus indicating his consent to join this action.

While Named Plaintiff only *recently* filed this action, the delay was caused through no fault of her own. Although Plaintiff terminated her employment with Defendants on June 18, 2014, since that date, Plaintiff Martinez has been the subject of a number of direct threats issued or instigated by Defendants in an effort to coerce or intimidate her from pursuing this action. Prior to Plaintiff Martinez's termination, Plaintiff complained on numerous occasions regarding the low wages she was paid in comparison to the weekly excessive hours she worked. (*See* Dkt. 15-1.) Even after Plaintiff terminated her employment with Defendants, they found ways of continuing to

2

harass her.[1]

On December 29, 2014 and two weeks following Plaintiff's demand letter to Defendants, Plaintiff received a call from her former sister-in-law who had spoken with Defendant D'Abbusco, and had asked her to pass along a threat of criminal prosecution if Plaintiff continued with the her case for unpaid wages. (*See* Murrieta Martinez Decl. ¶¶ 2-5.) During the conversation, Defendant D'Abbusco asked that Plaintiff's sister-in-law inform Plaintiff that the police were already looking for her as he had hired a private investigator and confirmed her immigration status and that Plaintiff Martinez had used a "fake" Social Security number, Plaintiff Martinez had no legal rights, and would probably be deported. (*See* Murrieta Martinez Decl. ¶ 3; *see also* Ex. B, Declaration of Silvia Nelson at ¶ 3 (hereinafter, "Nelson Decl.")). Plaintiff's counsel called Defendants, and advised them of the anti-retaliation provisions of the FLSA. (*See* Nelson Decl. ¶ 4.) Defendants assured Plaintiff's counsel that no such action had been taken, and denied having made any threats. (*See* Nelson Decl. ¶ 4.)

On January 5, 2015, Plaintiff's counsel sent a follow-up letter to Plaintiff's earlier demand, requesting a response by January 16, 2015. (*See* Ex. C, Plaintiff's Counsel's January 5, 2015 Correspondence to Defendants.) Defendants responded on January 13, 2015. (*See* Ex. D, Defendants' January 13, 2015 Email Response.) Unbeknownst to Plaintiff or her counsel, Defendant D'Abbusco had already filed a police report against Plaintiff that very same day. (*See* Nelson Decl. ¶ 6.) On January 15, 2015, Plaintiff's

---

[1] *See* Declaration of Maria Xochilt Murrieta Martinez ("hereinafter Murrieta Martinez Decl."), attached hereto as Ex. A.

3

counsel advised Defendants that Plaintiff was unable to accept their settlement offer, and explicitly repeated the previous warning regarding retaliatory action. (*See* Ex. E, Plaintiff's Counsel's January 15, 2015 Email Correspondence.)

On January 28, 2015, Plaintiff Martinez was arrested on charges stemming from a police report filed by Defendant D'Abbusco in retaliation for Plaintiff's efforts to pursue a claim for unpaid wages.[2] (*See* Ex. F, Plaintiff's Arrest Warrant and Bond Sheet; *see also* Nelson Decl. ¶ 7; *see also* Murrieta Martinez Decl. ¶¶ 2-5.) At the time of Plaintiff Martinez's arrest, opt-in Plaintiff San Agustin Alvarado was still employed with Defendants.[3] Opt-in Plaintiff Alvarado recalls that Defendant D'Abbusco instructed him to lie to the USDOL's government official if asked any questions about his pay in Spanish, that he should say he had no problems with his pay. (*See* San Agustin Alvarado Decl. ¶ 4.) If on the other hand, if the USDOL official called and asked any questions in English, that he should say he did not speak English and hang up. (*Id.*) During this time, and after learning of Plaintiff Martinez's incarceration, Plaintiff Alvarado became worried that if he stayed, Defendants would find a way to have him arrested as well, especially since he was also interested in pursuing a claim for unpaid wages. (*See* San Agustin Alvarado Decl. ¶¶ 5-6.) In fact, on April 18, 2015, Opt-in Plaintiff Alvarado ended his employment abruptly after Defendants' manager advised him to terminate his

---

[2] Upon information and belief, Defendants are currently the subject of a federal investigation by the U.S. Department of Labor –Wage and Hour Division, which recently visited their place of business and interviewed a number of employees, though the results of the investigation have not yet been released.

[3] *See* Declaration of Mateo San Agustin Alvarado, ¶ 3, (hereinafter "San Agustin Alvarado Decl."), attached hereto as Ex. G.

employment; otherwise, according to Defendants' manager, he ran the risk of getting arrested, like Plaintiff Martinez. (*See* San Agustin Alvarado Decl. ¶ 6.)[4]

## III.   PROCEDURAL HISTORY

On March 13, 2015, Plaintiff's Complaint was filed, and Defendants filed an Answer on May 11, 2015. (*See* Dkt. 1 and 8, respectively.) On June 12, 2015, the parties conferred in an attempt to come to a consensus regarding a discovery plan pursuant to Rule 26(f) but were unable to reach an agreement. On June 22, 2015, both parties filed their individual proposed Rule 26(f) reports. (*See* Dkt. 13 and 15.) That same day, Plaintiff's Motion for Conditional Certification was also filed. (*See* Dkt. 14.)

Defendants have a clear history of acting to intimidate current and former employees, in order to avoid potential consequences for the pay practices alleged in this lawsuit. Indeed, some putative plaintiffs who have contacted Plaintiff's counsel have indicated that they were hesitant to join the action, cooperate with an ongoing U.S. DOL investigation, or to even discuss Defendants' practices precisely because they were afraid of what Defendants would do to anyone who participated.

---

[4] The Court will no doubt observe that Plaintiff Miriam Martinez Solais has not filed a declaration in support of the instant Motion. On the advice of counsel representing her in the criminal charges, Plaintiff Martinez Solais is exercising her right to remain silent and is not providing any sworn statements at this time. Plaintiff is invoking her right to remain silent for fear that any statements she may make will be used against her in the criminal charges pending against her, which have arisen as a result of her assertions in this civil matter. Thus, Defendants' retaliatory action has already begun its chilling effect on this litigation. Fortunately or unfortunately, there are other witnesses to Defendants' actions.

## IV. ARGUMENT

### A. The FLSA Gives This Court Ample Authority to Protect Plaintiffs from Defendants' Unlawful and Egregious Conduct

Under the anti-retaliation provisions of the FLSA and Fed. R. Civ. P. 83, this Court is empowered to issue the protective order requested by Plaintiff. The FLSA broadly authorizes swift court action to ensure that workers may assert their rights in a climate free of all kinds of threatening and coercive activity. Under § 215(a)(3) of the FLSA, it is illegal "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceedings." 29 U.S.C. § 215(a)(3). As such, "[a]ny employer who violates the provisions of section 215(a)(3) of this title shall be liable for *such legal or equitable relief as may be appropriate to effectuate the purposes of section 215 (a)(3) of this title*[.]" (*See* 29 U.S.C. 215(b) (emphasis added)).

Courts, including the Supreme Court, have widely recognized the importance of swift and strong enforcement of the anti-retaliation protections contained within basic labor protection statutes.

> For weighty practical and other reasons, Congress did not seek to secure compliance with prescribed standards through continuing detailed federal supervision or inspection of payrolls. Rather it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied. Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances. This ends the prohibition of § 15(a)(3) against discharges and other discriminatory practices it was designed to serve. For it needs no

6

argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions.

*See Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292-93 (1960); *see also Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 437 (4th Cir. 2012) (same); *Darveau v. Detecon*, 515 F.3d 334, 340 (4th Cir. 2008) (same); *Bailey v. Gulf Coast Transportation, Inc.*, 280 F.3d 1333, 1336 (11th Cir. 2002) ("Employees may be much less likely to stand up for their substantive rights under [FLSA] if they know that months or years will pass before a court can act to halt prohibited intimidation by their employer."); *Marxe v. Jackson*, 833 F.2d 1121, 1126 (3d Cir. 1987) ("potential for intimidation may be reduced by some degree if potential witnesses observe that the court affords prompt relief from retaliatory action."); *Boudreaux v. Bantec, Inc.*, 366 F.Supp. 2d 425, 437-38 (E.D. La. 2005) ("The anti-retaliation provision of the FLSA was designed to prevent fear of economic retaliation by an employer against an employee who chose to voice such a grievance. By giving broad construction to the anti-retaliation provision to include the form of protest engaged in here by the charging parties, its purpose will be further promoted.")

The Federal Rules of Civil Procedure further contemplate court intervention in communications between parties to secure the fair adjudication of claims, especially in the context of class and collective actions. Rule 83 provides broad general authority for courts to "regulate practice in any manner consistent with federal law, rules adopted under 22 §§ U.S.C. 2072 and 2075, and local rules of the district." *Gulf Oil v. Bernard*, 452 U.S. 89, 99 n. 10 (1981) (noting "general authorization" provided by Rule 83).

7

Courts have supervisory authority over a defendant's communications with putative plaintiffs pursuant to 29 U.S.C. § 216. Because of the potential for abuse, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil*, 452 U.S. 89, 100 (1981); s*ee also Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165 170 (1989) ("a trial court has substantial interest in communications that are mailed for single actions involving multiple parties").

### 1. Plaintiff's Requested Relief Is Necessary and Legally Appropriate to Restrain Defendants' Illegal, Threatening, and Coercive Communications

Protective orders limiting communications with putative plaintiffs are highly appropriate where, as here, Defendants have engaged in coercive and abusive conduct toward members of a putative collective class. In *Gulf Oil v. Bernard*, the Supreme Court examined the power of district courts to issue protective orders restricting communications between parties and potential class members. 452 U.S. 89 (1981). The Court held that district courts have the power – indeed, the duty – to issue protective orders limiting communications between parties and potential class members where necessary to maintain the integrity and fairness of the legal process:

> Class actions serve an important function in the system of civil justice. They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases. Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.

*Id* at 100. The Court went on to articulate when courts may issue such protective orders:

8

> [A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for the limitation and the potential interference with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23. In addition, such a weighing – identifying the potential abuses being addressed – should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

*Id* at 101-02. Although *Gulf Oil* explicitly deals with class actions pursued under Rule 23, the standard articulated therein is regularly applied by courts to opt-in collective actions under 29 U.S.C. § 216(b), as both types of representative action rely heavily on a presumption that parties will not act to undermine the Court's authority to manage notice, or to undercut the fair, efficient litigation of the matter by actively seeking to prevent putative plaintiffs or potential class members from asserting their legal rights. *Randolph v. PowerComm Constr., Inc.*, 41 F. Supp. 3d 461, 464 (D. Md. 2014) ("A district court has the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. The same is true for a FLSA collective action. To fulfill this duty, courts may enter an order limiting communication if it furthers the general principles of class or collective actions.") (citing *Gulf Oil*, 452 U.S. 89 (1981), and *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 171 (1989)).

Although the district court order at issue in *Gulf Oil* addressed communications between plaintiffs' counsel and potential class members, courts routinely use the *Gulf Oil* test to evaluate the legality of protective orders limiting defendants and/or defense

9

communications with putative plaintiffs.  *See Adair v. EQT Prod. Co.*, 2011 U.S. Dist. LEXIS 110512 at *12-14 (W.D. Va. Sept. 28, 2011) ("The message of *Gulf Oil* is clear. Regulation of communication is appropriate where the purposes of Rule 23 are threatened or undermined").  Courts in the Fourth Circuit and sister Circuits have long recognized the impropriety of communications with putative class members, especially where their legal rights may be affected.  "Abusive practices that have been considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel."  *Paulino v. Dollar Gen. Corp.*, 2013 U.S. Dist. LEXIS 59371 (N.D. W. Va. Apr. 25, 2013); s*ee also Randolph*, 41 F. Supp. 3d 461 (D. Md. 2014) (where an employer had solicited opt-out agreements and declarations under potentially misleading or coercive circumstances, the court invalidated the agreements, because the agreements "were abusive in that they threaten[ed] the proper functioning of the litigation."); *Barton v. Pantry, Inc.*, 2006 U.S. Dist. LEXIS 62989 (M.D.N.C. Aug. 31, 2006) (articulating the standard for limiting communications as requiring a showing of improper action or inaccurate communication); *In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp. 2d 237, 253 (S.D.N.Y. 2005) ("when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization"); *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d Cir. 1980).

As demonstrated *supra*, in situations of abuse far less severe than that presented by Plaintiff, numerous courts have applied the *Gulf Oil* rule to substantially prohibit defendants' *ex parte* communications with plaintiffs and potential class members. The court in *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218 (S.D. Ala. 2008) articulated the standard thusly:

> An across-the-board ban on communications with putative class members may be appropriate where the abusive contact consists of telling lies to persuade an employee not to opt in, threatening an employee with discharge if she does opt in, falsely disparaging plaintiff's counsel to the employee to discourage her from opting in, or similarly egregious conduct that may poison the litigation to its core.

*Id* at 1231. Other courts have criticized, banned, and invalidated similar communications made without court supervision and prior approval. *See Belt v. Emcare Inc.*, 299 F. Supp. 2d 664 (E.D. Tex. 2003) (limiting defendant's communications based on a misleading letter which "equated [the suit] with a malpractice suit and suggested that [the] action could 'affect ongoing clinical operations' in an attempt to frighten potential class members from joining this action."); *In re Currency Conversion Fee Antitrust Litigation*, 361 F.Supp. 2d at 253-54; *Williams v. Securitas Sec. Servs. USA, Inc.*, 2011 U.S. Dist. LEXIS 75502 at * 8-9 (E.D. Pa. July 13, 2011); *Molyneux v. Securitas Sec. Servs. USA, Inc.*, 2011 U.S. Dist. LEXIS 156173 at *10-13 (S.D. Iowa July 8, 2011); *Balasanyan v. Nordstrom, Inc.*, 2012 U.S. Dist. LEXIS 30809 at *14 (S.D. Ca. 2012); *In re School Asbestos Litigation*, 842 F.2d 671, 682 (3d Cir. 1988) (listing cases in which defendants "sought to either affect class members' decisions to participate in the litigation or to undermine class plaintiffs' cooperation with or confidence in class counsel).

11

Of even greater concern, however, are Defendants' threats and actions related to criminal and immigration action against putative plaintiffs. The closest analogs Plaintiff's research has thus far yielded to the outrageous conduct of Defendants in the instant case are *Centeno-Bernuy v. Perry*, 2009 U.S. Dist. LEXIS 103580 (W.D.N.Y. July 14, 2009) and *Recinos-Recinos v. Express Forestry, Inc.*, 2006 U.S. Dist. LEXIS 2510 (E.D. La. Jan. 23, 2006). In *Centeno-Bernuy*, a defendant-employer reported several H-2A agricultural employees pursuing unpaid wages to immigration officials and the Department of Homeland Security, alleging that they were terrorists in an effort to have them arrested or deported. *Centeno-Bernuy*, 2009 U.S. Dist. LEXIS 103580 at *15-16. The court had previously entered an injunction prohibiting any further attempts to have the plaintiffs arrested or deported, finding that it was "clear" that Defendant attempted to use immigration agents to prevent plaintiffs from continuing their litigation, and granted summary judgment to plaintiffs on retaliation claims. *Centeno-Bernuy*, 2009 U.S. Dist. LEXIS 103580 at *15-16, 27-29.

Defendants' conduct in the *Recinos-Recinos* case was hardly better. There, defendant-employers of numerous H-2B visa workers native to Guatemala sent agents to the home villages and the very homes of numerous plaintiffs in an FLSA case. *Recinos-Recinos*, 2006 U.S. Dist. LEXIS 2510 at *10-14. These agents, often meeting with plaintiffs' family members, threatened that plaintiffs risked incarceration, deportation, and physical harm in continuing with the lawsuit. *Id*. They also offered bribes, and attempted to get contact information for the plaintiffs. *Id.* The *Recinos-Recinos* court

12

issued a protective order on the strength of sworn statements from those affected. *Id* at *39-40.

Here, Defendants have not only *threatened* and *attempted* to have Plaintiff and putative plaintiffs arrested or deported; in the case of Plaintiff Martinez Solais, she spent five (5) days in jail, and Defendants have used that "success" to discourage others from participating in the action, lest they suffer the same consequences. (*See* San Agustin Alvarado Decl. ¶¶ 5-6.) Indeed, as noted above, Plaintiff is somewhat constrained even in pursuing the instant Motion for Protective Order as a result of Defendants' retaliatory action. Through the declarations attached to this Memorandum, Plaintiff produces compelling evidence that Defendants have engaged in illegal conduct intended solely to threaten, intimidate, and coerce Plaintiff and others into abandoning their FLSA claims. (*See* Exs. A, B, F, and G generally.) As discussed *infra*, this Court should restrict Defendants' communications with Plaintiff, opt-in plaintiff, putative plaintiffs, and their families in order to protect Plaintiffs and putative plaintiffs and their families from harm, and to preserve putative plaintiffs' rights to freely make their own decisions concerning participation in this litigation, and to ensure that this putative collective action may be litigated fairly on the merits. The proposed terms of the protective order are as narrowly drawn as possible in light of the egregious and repeated nature of Defendants' abuses.

> **2. Declarants' Sworn Assertions of Specific Threats And Acts of Intimidation And Coercion Demonstrate An Urgent Need For Limitations on Defendants' Communications With Plaintiffs, Putative Plaintiffs, and Their Family Members**

As described in the declarations attached to this Memorandum, Defendants, both directly and through agents, have embarked on a coordinated campaign of in-person threats, arrest, intimidation, and coercion of Plaintiffs and putative plaintiffs to undermine this lawsuit. (*See* Exs. A, B, F, and G, generally.) Defendants' direct and implied threats of violence, incarceration, and deportation against Plaintiffs and their family members, as well as the history of <u>actual</u> retaliatory action, patently violate the anti-retaliation provisions of the FLSA. *See* 29 U. S. C. § 215(a)(3). Moreover, they constitute abusive and coercive communications that, under *Gulf Oil*, warrant this Court's immediate protective action.

Plaintiff thus asks that the Court issue a protective order prohibiting Defendants, whether acting directly or indirectly through any agents, counsel, or intermediaries, from any communications with Plaintiff and opt-in plaintiff, except as conducted through this Court, Plaintiffs' counsel, or the formal discovery process. Such an order is not unusual, even under circumstances considerably less grave than those that exist here. Indeed, as noted *supra* at 9-12, numerous courts have issued protective orders of similar scope based on conduct *far less* severe than that perpetuated by Defendants in this case.

Plaintiffs and putative plaintiffs have been subject to much more abusive and coercive communications than those described in the cases cited above. (*See* Ex. A, B, F, and G, generally.) Defendants did not merely call Plaintiffs or send them letters; they sent messages through family consisting entirely of direct threats to drop *any* potential action or risk arrest or deportation, had named Plaintiff arrested, and warned others against participating in the action or cooperating with a federal investigation, lest they

receive the same treatment. (*See* Murrieta Martinez Decl. ¶¶ 2-5; San Agustin Alvarado Decl. ¶¶ 4-6.) In the case of Plaintiff Martinez, Defendants not only sent word of the specifics of their anticipated retaliatory actions, but followed through and had her arrested. (*See* Murrieta Martinez Decl. ¶¶ 3-5; Nelson Decl. ¶ 7-9.) Defendants and their agents have also explicitly told employees that what happened to Plaintiff Martinez could happen to them as well, should they be found to be involved in this action. (*See* San Agustin Alvarado Decl. ¶¶ 5-6; Nelson Decl. ¶ 7-9.) Defendants' actions have proceeded well beyond *suggestion* of *economic* harm, as they have not only threatened incarceration and deportation, but have actually acted to follow through on those threats.

In fact, a court need not find actual harm to Plaintiffs or putative class members or plaintiffs in order to issue a protective order prohibiting communications between Defendants and putative class members or plaintiffs. *Murton v. Measurecomp, LLC*, 2008 U.S. Dist. LEXIS 108085 at *13-14 (N.D. Ohio Dec. 2, 2008) ("While the party seeking to limit communications with the class need not prove actual harm, the movant must present evidence establishing a potential likelihood of serious abuse."); *Mejia v. Bros. Petroleum, LLC.*, 2015 U.S. Dist. LEXIS 18180 (E.D. La. Feb. 13, 2015) ("A showing of actual harm is not necessary. It is unnecessary for a trial court to issue particularized findings of abusive conduct when a given form of speech is inherently conducive to overreaching and duress."); *Bobryk v. Durand Glass Mfg. Co.*, 2013 U.S. Dist. LEXIS 145758 at *25-26, n. 7 (D.N.J. Oct. 9, 2013) ("The Third Circuit explained that Rule 23(d) does not . . . require a finding of actual harm; it authorizes the imposition of a restricting order to guard against the likelihood of serious abuses.").

15

Although Plaintiff and opt-in plaintiff here can demonstrate concrete harm – threats to themselves and family members and incarceration – a protective order is more than justified by the inherently coercive nature of Defendants' conduct and Defendants' unfettered access to putative plaintiffs. Existing case law leans strongly in favor of issuance of a protective order where defendants have engaged in coercive and improper conduct, or as necessary to preserve the integrity of proceedings under collective or class action schemes. *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 764-65 (4th Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999) (affirming a district court's limitation of *ex parte* communications between defendant employer and current African-American employees to topics unrelated to ongoing Title VII class litigation); *Randolph*, 41 F. Supp. 3d 461 (D. Md. 2014); *Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 679 (N.D. Ga. 1999) (issuing order prohibiting employer's direct communications with potential Title VII class members because of the dangers posed by employers' "unilateral" and "unsupervised" access to potential class members).

### 3. The Proposed Protective Order Is Narrowly Tailored to Limit Defendants' Conduct Only to the Extent Necessary to Protect the Well-Being and Rights of Plaintiff, Opt-In Plaintiff, Putative Plaintiffs, and Their Families.

Plaintiff asks that this Court prohibit Defendants and their agents, to include individuals acting on behalf of Defendants but not employed by them, from all *ex parte* communications with Plaintiff, opt-in plaintiffs and their family members, except through this Court, Plaintiffs' counsel, or the formal discovery process. Plaintiff also requests that Defendants be barred from *ex parte* communications related to this litigation with

16

putative plaintiffs and their family members, unless such communications are authorized by the Court, Plaintiffs' counsel, or the formal discovery process. Plaintiff's proposed order does not deny Defendants their right to engage in discovery or to communicate with employees about subjects unrelated to the instant litigation. *Kleiner v. First Nat'l Bank,* 751 F.2d 1193, 1206 (11th Cir. 1985) ("[T]he ambit of the order was restricted to communications regarding the litigation. The order thus did not impinge on the Bank's ability to speak with customers about routine business matters unrelated to the lawsuit.").

Nor is Plaintiff's proposed order any more restrictive than necessary given the gravity of Defendants' attempts to convince putative plaintiffs to relinquish their claims. As the court in *Hampton Hardware v. Cotter & Co.*, 156 F.R.D. 630 (N.D. Tex. 1994) found:

> "[A]n order any less restrictive would not effect the purposes of [the statute]. It is difficult to conceive of any advice from [the defendant] regarding the lawsuit that is not rife with potential for confusion and abuse given [the defendant's] interest in the suit . . . there is no less onerous alternative than to prohibit all communications regarding the lawsuit."

*Id*. at 633-34.

As detailed *supra*, orders of the scope proposed by Plaintiff are routinely granted, especially where, as here, defendants have engaged in abusive, threatening, and coercive communications with potential class members. Defendants have no legitimate purpose in communications which violate the anti-retaliation provisions of the FLSA and undermine this Court's ability to manage the notice process. In light of Defendants' glaring violations of federal laws forbidding retaliation, the inherent coerciveness of

17

communications between Defendants and putative plaintiffs, and Defendants' demonstrated intent to undermine the policies of 29 U.S.C. § 216, this Court should move quickly to grant a protective order containing the restrictions that Plaintiff proposes in her Motion.

> **B.**  **Plaintiff's Proposed Restrictions on Proposed Discovery, Investigation, or Inquiry Into the Immigration Status of Plaintiff, Opt-In Plaintiff, Putative Plaintiffs, or Their Family Members Are Consistent with Case Law and Federal Policy and Enable Defendants to Engage in All Relevant and Necessary Discovery**

Directly, and through their agents, Defendants have threatened to have Plaintiff and opt-in Plaintiff arrested or deported if they continue with this case. *See* Ex. A, Murrieta Martinez Decl.; Ex. B, Nelson Decl.; Ex. F, San Agustin Alvarado Declaration. Defendants have specifically warned that participating in this action, or cooperating with federal authorities investigating Defendants, could lead to arrest or deportation. (*See* San Agustin Alvarado Decl. at ¶ 3-5.) Given these acts of intimidation, this Court should enjoin the Defendants from attempting to retaliate against the plaintiffs by reporting them to immigration or law enforcement officials; by taking any other similar action; and by threatening to take such action. This Court should further enjoin Defendants from inquiring into or engaging in any discovery related to the immigration status of Plaintiff, opt-in plaintiff, or putative plaintiffs. Such inquiries are intended solely to harass and intimidate plaintiffs and putative plaintiffs, and are completely irrelevant to the substance of this case.

Plaintiff's claims are based on Defendants' failure to pay Plaintiff and those similarly situated at least minimum wage for all hours worked, as well as overtime at the rate of time and one-half for all hours worked over forty (40) per workweek. Because these claims relate only to payments which should have been made during the time when Defendants employed Plaintiff and those similarly situated, there is no conceivable basis for allowing discovery into Plaintiffs' and putative plaintiffs' employment by other employers, their place of residence at any time other than when they were employed by Defendants, or anything else about their personal lives.

Because the wage claims in this case are focused on the questions related to whether Plaintiff and those similarly situated were paid what they were entitled under federal law, courts in the Fourth Circuit and elsewhere hold that even formal discovery on the issue of immigration status is utterly irrelevant. *See Montoya v. S.C.C.P. Painting Contrs., Inc.*, 530 F. Supp. 2d 746, 750 (D. Md. 2008) (finding that "the immigration status of a class representative is irrelevant in wage and hour cases, in light of FLSA's coverage of all workers – *undocumented or no*t. Courts have noted that such a position not only benefits the individual workers, but advances the goals of the FLSA."); *Baca v. Brother's Fried Chicken* 2009 U.S. Dist. LEXIS 42306 at *4 (E.D. La. May 13, 2009) ("Inasmuch as the protections provided by the FLSA apply to undocumented aliens, the plaintiffs' immigration status, social security numbers and addresses are not relevant."); *Flores v. Dibenedeto*, 2013 U.S. Dist. LEXIS 145083 (D. Conn. Oct. 8, 2013) (finding that defendant's argument that immigration status affected plaintiffs' credibility did "not outweigh the chilling effect that disclosure of immigration status has on enforcing their

19

rights."); *Marquez v. Erenler, Inc.,* 2013 U.S. Dist. LEXIS 138630 (S.D.N.Y. Sept. 20, 2013) (denying discovery into plaintiffs' immigration status based on "the irrelevance of immigration status to an FLSA claim, as well as the chilling effect that such compelled disclosure would have on enforcement of the FLSA").

Allowing Defendants to pursue discovery on this subject, much less the retaliatory, informal "investigations" engaged in thus far, would grossly prejudice Plaintiff and those similarly situated. Inquiry into employment history, place of residence, or other indicators of immigration status may profoundly chill a putative plaintiff's willingness to pursue valid claims. This case is no different. Plaintiff's employment and residential histories, as well as other details related to her immigration status, are utterly irrelevant and purely collateral to the parties' claims or defenses. The same holds true for opt-in and putative plaintiffs, and potentially witnesses. Defendants should be prevented from threatening, "investigating," or taking any further action with immigration, law enforcement, or other officials to attempt to effectuate the arrest, incarceration or deportation of Plaintiff, opt-in plaintiffs, and putative plaintiffs – with the obvious caveat that in the proceedings already begun against Plaintiff at Defendant D'Abbusco's behest, Defendants must cooperate with the state criminal court as obliged under the law, until that proceeding reaches its conclusion. Plaintiff recognizes that where Defendants have already used the criminal court system to retaliate against her, she is obliged to endure until the proceedings run their course. However, Plaintiff respectfully requests that the Court will act to protect others from retaliatory action of the sort that she has far suffered.

Clearly articulated federal law and policy bars employers from using the threat of potential immigration violations to chill their employees' rights under federal employment laws. An employer may be held liable for unlawful retaliation when it reports complaining employees to ICE. *See* 29 U.S.C. § 215(a)(3) and § 216 (allowing punitive damages for retaliation); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 103 F. Supp. 2d 1180 (N.D. Cal 2000) (granting summary judgment for plaintiff where defendant reported plaintiff to immigration officials after plaintiff asserted wage claims); *cf. Sure-Tan, Inc. v. Nat'l Labor Relations Bd.*, 467 U.S. 883, 894 (1984) (reporting undocumented alien workers to INS in retaliation for their participation in union activities is unfair labor practice under National Labor Relations Act). In order to permit this case to proceed on its merits, the Court must enjoin Defendants' threats and any further attempts to seek the arrest and/or deportation of Plaintiff, opt-in plaintiff, putative plaintiffs, and their families. To prevent Defendants from using the discovery process as an opportunity to continue propagating the *in terrorem* effect they so blatantly seek, a protective order is required.

## C. Defendants Should Be Ordered to Produce the Names and Addresses of All Putative Plaintiffs So That Plaintiffs May Send a Corrective Notices Containing Information Concerning Putative Plaintiffs' Rights Under the Anti-Retaliation Provisions of the Fair Labor Standards Act

Where Defendants have acted affirmatively to discourage putative plaintiffs from participating in a suit, courts have ordered that corrective notice be sent to all putative plaintiffs. *Emcare*, 299 F. Supp. 2d at 669-70 (ordering prompt issuance of corrective notice to all putative FLSA plaintiffs after defendants engaged in *ex parte*

21

communications); *Shores v. Publix Super Markets, Inc.*, 1996 U.S. Dist. LEXIS 22396 (M.D. Fla. 1996) (where defendant-employer engaged in direct, coercive communications with class members, court ordered corrective notice to apprise potential class members of their rights and to correct misconceptions). Here, where Defendants have undertaken a sustained campaign of retaliation and intimidation, putative plaintiffs should be notified that Defendants' activities are illegal and that putative plaintiffs are not under any obligation to speak with Defendants, their agents, or anyone else acting on their behalf concerning the substance of this litigation. Such corrective language would be most easily included in the Court-approved notice following the Court's granting of conditional certification.

Given Defendants' *shocking* accusations that Plaintiff's counsel has improperly solicited putative plaintiffs, including allegations that putative plaintiffs have been offered immigration services or pecuniary gains in exchange for participation or testimony, Plaintiffs' counsel has reason to believe that Defendants have collected signed documents from putative plaintiffs with coercive threats and fear.[5] While the substance of those documents is still unknown, Plaintiffs' counsel is concerned that such documents may include language purporting to waive putative plaintiffs' rights to participate in the ongoing collective action, or which would purport to state that Defendants have paid putative plaintiffs all wages due. Should this concern blossom into reality, Plaintiff

---

[5] Defendants' counsel has suggested a 45-day period to gather declarations from putative plaintiffs. Given Defendants' history of retaliation against Plaintiff Martinez, putative plaintiffs will certainly not hesitate to give or sign whatever Defendants ask without question.

22

proposes that such "waivers" be invalidated, and that the Court-approved notice include additional corrective language informing putative plaintiffs of their right to participate in the lawsuit. Plaintiffs' counsel have the capacity and resources to oversee the drafting and issuance of corrective notice, following the Court's approval of conditional certification and the substance of the notice.

The corrective notice would notify putative plaintiffs of their right to participate in this action, of their legal protections against retaliation, and would also inform them how they may contact Plaintiffs' attorneys to ask about the pending lawsuit. Such notice is particularly critical where, as here, putative plaintiffs are largely immigrants who may lack familiarity with the rights of litigants in the U.S. legal system. This Court should order the Defendants to release putative plaintiff contact information so that Plaintiff may redress some of the harm, fear, and misconceptions that Defendants' conduct has caused.

## V. <u>CONCLUSION</u>

For the reasons discussed above, Plaintiff, on behalf of herself and others similarly situated, respectfully asks that this Court act quickly to protect them from Defendants' further unlawful acts of intimidation, coercion, and egregious retaliatory conduct. The Court is fully empowered to provide the protection Plaintiff seeks, a protective order:

(1) lasting from the present to the end of trial, barring Defendants and their agents from all *ex parte* communications with Plaintiff, opt-in and putative plaintiffs, and their families regarding this litigation, unless such communications are within the *formal* discovery process or are first approved by this Court or by Plaintiff's counsel;

(2)  lasting from the present until the end of trial, barring Defendants and their agents from *ex parte* communications with Plaintiff, opt-in and putative plaintiffs not currently employed by Defendants;

(3) prohibiting Defendants and their agents from any inquiry, discovery, or investigation of Plaintiff's, opt-in and putative Plaintiffs, or their family members' past or present immigration status;

(4) prohibiting Defendants and their agents from reporting, investigating, or engaging in any further efforts to have Plaintiff, opt-in and putative Plaintiffs, or their family members arrested, detained, jailed, or deported from the United States;

(5) should the Court grant Plaintiff's Motion for Conditional Certification, the inclusion of *corrective* language in a Court-approved notice to putative plaintiffs which will advise them of their rights; and

(6) an order for whatever other relief this Court deems appropriate.

Respectfully submitted, this 26th day of June, 2015.

/s/ Gilda Adriana Hernandez
Gilda A. Hernandez (NCSB No. 36812)
THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC
315 S. Salem St., Suite 310
Apex, NC 27502
Tel:  (919) 741-8693
Fax:  (919) 869-1853
ghernandez@gildahernandezlaw.com

Adam T. Klein
Sally J. Abrahamson
**OUTTEN & GOLDEN, LLP**

24

3 Park Ave., 29th Fl.,
New York, NY 10016
ATK@outtengolden.com
sabrahamson@outtengolden.com
T: 212-245-1000
F: 646-509-2060

*Attorneys for the Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 26, 2015, the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A PROTECTIVE ORDER TO ADDRESS DEFENDANTS' IMPROPER COMMUNICATION WITH PUTATIVE CLASS MEMBERS** was served in accordance with the Federal Rules of Civil Procedure on the following:

Denise Smith Cline
Law Offices of Denise Smith Cline
N.C. Bar No. 010837
16 N. Boylan Avenue
Raleigh, NC 27603
Telephone: (919) 926-0734
Facsimile: (980) 225-5189
Email: denise@dsclinelaw.com

*/s/ Gilda Adriana Hernandez*
 Gilda A. Hernandez (NCSB No. 36812)
THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC
315 S. Salem St., Suite 310
Apex, NC 27502
Tel:  (919) 741-8693
Fax:  (919) 869-1853
ghernandez@gildahernandezlaw.com

Adam T. Klein
Sally J. Abrahamson
**OUTTEN & GOLDEN, LLP**
3 Park Ave., 29th Fl.,
New York, NY 10016
ATK@outtengolden.com
sabrahamson@outtengolden.com
T: 212-245-1000

26

F: 646-509-2060

*Attorneys for the Plaintiffs*

27