**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

MIRIAM MARTINEZ SOLAIS,      )
on behalf of herself and all  )
others similarly situated,    )
                              )
            Plaintiff,        )
                              )
      v.                      )         1:15CV227
                              )
VESUVIO'S II PIZZA & GRILL, INC.  )
and GIOVANNI SCOTTI D'ABBUSCO,    )
                              )
            Defendants.       )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on "Defendants' Motion to Compel and for Extension of Deadlines to Complete Discovery and Respond to Plaintiffs' Motion to Certify" (Docket Entry 27) (the "Motion to Compel"); "Plaintiffs' Motion to Quash Subpoenas to Non-Parties, or, in the Alternative, Motion for Protective Order" (Docket Entry 29) (the "Motion to Quash"); "Defendants' Amended Motion to Compel" (Docket Entry 39) (the "Supplemental Motion"); and "Plaintiff's Supplemental Response in Opposition to Defendants' Motion to Compel and for Extension of Deadlines (Dkt. 27); 'Amended' Motion to Compel (Dkt. 39), or in the Alternative, Motion for Protective Order" (Docket Entry 46) (the "Responsive Motion"). For the reasons that follow, the Court will grant in part and deny in part the Motion to Compel and the Supplemental Motion, will deny the Responsive Motion, and will grant the Motion to Quash.

**BACKGROUND**

On March 13, 2015, Plaintiff Miriam Martinez Solais (the "named Plaintiff") initiated a putative collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., (the "FLSA") and a putative class action under the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1 et seq., on behalf of certain kitchen workers at Vesuvio's II Pizza & Grill, Inc. ("Vesuvio's II"). (Docket Entry 1.) According to named Plaintiff's Complaint, Giovanni Scotti D'Abbusco (the "Individual Defendant") and Vesuvio's II (collectively with Individual Defendant, the "Defendants") failed to pay named Plaintiff and other kitchen workers minimum wages and overtime, as mandated by law. (See, e.g., id., ¶¶ 2-4, 14, 17-18, 30, 34.) On June 19, 2015, named Plaintiff filed a Consent to Join Suit as Party Plaintiff on behalf of Mateo San Agustin Alvarado (the "opt-in Plaintiff," and collectively with named Plaintiff, the "Plaintiffs"). (Docket Entries 12, 12-1.)

Three days later, named Plaintiff filed a motion for conditional certification of the collective action under the FLSA (Docket Entry 14), in connection with which motion Defendants sought discovery (see Docket Entry 13 at 2-3).[1] In particular,

---

[1] Citations herein to Docket Entry pages utilize the document's internal pagination if unified internal pagination exists. In the absence of such pagination, the Docket Entry page citations utilize the CM/ECF footer's pagination.

2

Defendants requested "a forty-five (45) day period to complete initial discovery on the manner and means of recruitment by [named] Plaintiff or her counsel." (Id. at 3.) After hearing argument of counsel regarding the requested discovery (see generally Docket Entry 21), the Court "authoriz[ed] a 45-day period (through [August 14,] 2015) for limited discovery pertaining to the named Plaintiff and the opt-in Plaintiff on the subject of factual issues raised by [named Plaintiff's] Motion for Conditional Certification (but not any equitable defenses related to alleged recruitment of potential plaintiffs as proposed by Defendant[s] in [Defendants'] Rule 26f Report)" (Text Order dated June 30, 2015 (the "Text Order")).

On July 2, 2015, Defendants served their First Set of Requests for Production of Documents (the "Requests") on Plaintiffs (Docket Entry 27 at 2), to which Plaintiffs responded on August 3, 2015 (id. at 3). Meanwhile, on July 22, 2015, Defendants' counsel proposed depositions of Plaintiffs "on August 12, 13 or 17 in Wake County." (Docket Entry 27-1 at 1-2.) Plaintiffs' counsel did not respond to this proposal until she received Defendants' deposition notices on July 28, 2015. (See id. at 1; Docket Entry 27-2.) The notices set the depositions of opt-in Plaintiff at 9:30 a.m. and named Plaintiff at 2:00 p.m. on Wednesday, August 12, 2015, in Raleigh, North Carolina. (Docket Entry 27-2 at 2, 5.) In response to the deposition notices, Plaintiffs' counsel indicated, "I think August 12 should be fine for named plaintiff Martinez, and I will

check back with you on opt-in plaintiff Alvarado." (Docket Entry 27-1 at 1.)

The parties apparently had no further communication about these depositions until 5:09 p.m. on Friday, August 7, 2015, when Plaintiffs' counsel sent an email to Defendants' counsel stating,

> For next week's depositions of plaintiffs Plaintiff [sic] Martinez and San Agustin Alvarado, while plaintiff Martinez will be physically present for her deposition, opt-in Plaintiff, Alvarado, will not be physically present because he now resides in Ohio. As you recall, I advised you that while I was confident that Plaintiff Martinez could sit for an August 12 deposition, I was not so sure about opt-in plaintiff Alvarado. Because he now lives in Ohio, the deposition will have to be taken telephonically; unless you would prefer to travel to Ohio to take his deposition.

(Docket Entry 27-4 at 2; see id. at 1.) Defendants' counsel objected to the late notification of opt-in Plaintiff's unavailability for an in-person deposition in Raleigh,[2] and declined to take his deposition telephonically. (Id. at 1.) Ultimately, the parties agreed to take opt-in Plaintiff's deposition via videoconference from Ohio on August 18, 2015,[3] but they failed to agree on who should bear the expense associated with this videoconference deposition. (See Docket Entry 27-5.)

---

2   Defendants' counsel was especially perturbed "to learn of [opt-in Plaintiff] Alvarado's unavailability after 5 pm on a day when [Defendants' counsel] ha[d] spent the entire day in deposition with [Plaintiffs' counsel]." (Docket Entry 27-4 at 1.)

3   The parties also agreed to seek an extension of the August 14th discovery deadline to accommodate an August 18th deposition. (See Docket Entry 27-5 at 1-3.)

4

On August 12, 2015, Defendants' counsel deposed named Plaintiff. (Docket Entry 36-1 at 1.) During this deposition, Plaintiffs' counsel objected to, and instructed named Plaintiff not to answer, certain questions as "outside the scope of the June [30]th, 2015 Order limiting discovery to plaintiff's motion for conditional certification. Questions are only limited to factual questions." (Id. at 12.) On August 13, 2015, Defendants' counsel sent a letter to Plaintiffs' counsel regarding the depositions and Plaintiffs' responses to the Requests, asserting that "by this letter [Defendants' counsel was] attempting to confer in good faith to reach a resolution" of the parties' "significant disagreements about the conduct of discovery." (Docket Entry 32-1 at 5.) Although Defendants' counsel did not send the letter until 9:37 a.m., she "request[ed] [Plaintiffs'] response by 4:00 p.m. today" lest Defendants "be forced to raise the[se issues] in a motion to compel." (Id.) Plaintiffs' counsel responded to Defendants' letter that same day, articulating Plaintiffs' position on the identified issues and observing that, "unfortunately, the parties will not be able to reach any agreement on the issues outlined in [Defendants'] letter." (Id. at 10.) The next day, Defendants filed their Motion to Compel. (Docket Entry 27 at 10.)

There is no indication that the parties made any further attempts to resolve their disagreements regarding permissible deposition questions prior to opt-in Plaintiff's deposition on

August 18, 2015. At that deposition, Plaintiffs' counsel similarly objected to, and instructed opt-in Plaintiff not to answer, certain questions. (See, e.g., Docket Entry 39-1 at 12 ("Objection. I'm going to instruct the witness not to answer. This is outside of the Court's June 30th, 2015 Order limiting discovery to the named Plaintiff and opt-in Plaintiff as it relates to Plaintiff's Motion for Conditional Certification and Notice and the factual allegations raised in that motion.").) Following that deposition, Defendants filed their Supplemental Motion, which focuses on Plaintiffs' counsel's objections and instructions during opt-in Plaintiff's deposition. (See generally Docket Entry 39.) Through the Responsive Motion, Plaintiffs timely responded in opposition to the Supplemental Motion and, additionally, sought entry of a protective order regarding permissible discovery in this matter. (See generally Docket Entry 46.)

Meanwhile, on August 7, 2015, Defendants served subpoenas on two nonparties, seeking in one subpoena "[a]ny documents relating [to] Mateo San Augustin [sic] Alvarado" and in the other two subpoenas "[a]ll documents relating to Miriam Martinez Solais." (Docket Entry 29-1 at 2, 5, 8.) The subpoenas demanded production by 10:00 a.m. on August 18, 2015. (Id.)[4] Defendants did not

_____

    4    This production date fell outside the Text Order's discovery deadline. The record does not establish whether these subpoenas issued before or after Plaintiffs' counsel contacted Defendants' counsel about the upcoming depositions, but Defendants'
(continued...)

6

provide prior notice of these subpoenas to Plaintiffs.  (<u>See</u> Docket
Entry 29-2 at 1.)  Upon learning of these subpoenas a few days
after their issuance, Plaintiffs sent a letter to Defendants
outlining various objections to, and requesting withdrawal of, the
subpoenas.  (Docket Entry 29-2.)  Defendants failed to respond to
this letter (Docket Entry 47 at 4 n.3), prompting Plaintiffs'
Motion to Quash.

**DISCUSSION**

<u>I.  Legal Framework</u>

<u>A.  FLSA Standards</u>

Under the FLSA, an employee can pursue an action for unpaid
overtime and minimum wages on "behalf of himself . . . and other
employees similarly situated."  29 U.S.C. § 216(b).  For FLSA
purposes, "[p]utative class members are similarly situated . . . if
they raise a similar legal issue as to coverage, exemption, or
nonpayment o[f] minimum wages or overtime arising from at least a
manageably similar factual setting with respect to their job
requirements and pay provisions."  <u>McLaurin v. Prestage Foods,
Inc.</u>, 271 F.R.D. 465, 469 (E.D.N.C. 2010) (internal quotation marks

---

4(...continued)
counsel failed to disclose these subpoenas in any of the
correspondence between the parties in the record.  Any undisclosed
discovery outside the discovery period would raise substantial
questions.  <u>See</u> <u>Black v. Younque</u>, Civil Action No. 14-505, 2014 WL
7335030, at *3-4 (W.D. Pa. Dec. 19, 2014) (concluding that party
acted in bad faith in issuing nonparty subpoena without notice to
opposing party after close of discovery).

omitted).[5] To become a party plaintiff, each "similarly situated" employee must "give[] his consent in writing to become such a party and such consent [must be] filed in the court in which such action is brought." 29 U.S.C. § 216(b). Because the statute of limitations does not stop running until an employee affirmatively opts into the lawsuit, courts employ a two-stage certification procedure for FLSA collective actions. Houston v. URS Corp., 591 F. Supp. 2d 827, 831 (E.D. Va. 2008).

At the first stage, known as conditional certification, "the court determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." Adams v. Citicorp Credit Servs., Inc., ___ F. Supp. 3d ___, ___, 2015 WL 1279544, at *9 (M.D.N.C. Mar. 20, 2015) (internal quotation marks omitted).[6] Although not a "rubber-stamp approach," the conditional certification standard is "fairly lenient[:]" the plaintiff "need only make a relatively modest factual showing that a common policy, scheme or plan that

---

5    FLSA collective actions lack the "requirements of numerosity, commonality, typicality and adequacy" associated with Rule 23 class actions. Robinson v. Empire Equity Grp., Inc., Civ. Action No. 09-1603, 2009 WL 4018560, at *1 n.8 (D. Md. Nov. 18, 2009).

6   The second stage, known as decertification, only occurs if conditional certification is granted and a defendant, "usually after discovery is virtually complete[,]" moves to decertify the class. Long v. CPI Sec. Sys., Inc., 292 F.R.D. 296, 299 (W.D.N.C. 2013).  At that stage, "courts apply a heightened fact specific standard to the similarly situated analysis." Id.

violated the law exists." Id. at *9-10 (internal quotation marks
and alterations omitted). Moreover, when evaluating conditional
certification, "the Court does not resolve factual disputes, decide
substantive issues on the merits, or make credibility
determinations." Id. at *10 (internal quotation marks omitted).
These conditional certification standards guide the Court's
analysis of the instant motions.

### B. Discovery Standards and Obligations

"The purpose of discovery is to provide a mechanism for making
relevant information available to the litigants." Fed. R. Civ. P.
26 advisory committee's notes, 1983 Amendment. Accordingly,
"[u]nless otherwise limited by court order, the scope of discovery
is as follows: Parties may obtain discovery regarding any
nonprivileged matter that is relevant to any party's claim or
defense . . . ." Fed. R. Civ. P. 26(b). Relevancy "essentially
involves a determination of how substantively the information
requested bears on the issues to be tried." Mills v. East Gulf
Coal Preparation Co., LLC, 259 F.R.D. 118, 131 (S.D. W. Va. 2009)
(internal quotation marks omitted); see also Cook v. Howard, 484 F.
App'x 805, 812 (4th Cir. 2012) ("Relevance is thus the foundation
for any request for production, regardless of the individual to
whom a request is made."). Moreover, "[e]ven assuming that th[e]
information is relevant (in the broadest sense), the simple fact
that requested information is discoverable . . . does not mean that

discovery must be had.  On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit [discovery] . . . ."  <u>Nicholas v. Wyndham Int'l, Inc.</u>, 373 F.3d 537, 543 (4th Cir. 2004).  As such, "[d]istrict courts enjoy nearly unfettered discretion to control the timing and scope of discovery and [to] impose sanctions for failures to comply with [their] discovery orders."  <u>Hinkle v. City of Clarksburg, W. Va.</u>, 81 F.3d 416, 426 (4th Cir. 1996); <u>accord</u> <u>Cook</u>, 484 F. App'x at 812 ("District courts are afforded broad discretion with respect to discovery generally, and motions to quash subpoenas specifically.").

To minimize the necessity of judicial intervention in discovery disputes, counsel have certain obligations in conducting discovery.  <u>See</u> Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment Subdivision (g) ("If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse.").  To begin with, this Court's Local Rules mandate that counsel "conduct discovery in good faith and . . . cooperate and be courteous with each other in all phases of the discovery process."  M.D.N.C. LR 26.1(b)(1).  Furthermore, pursuant to Rule 26 of the Federal Rules of Civil Procedure (the "Rules"), counsel bear "an <u>affirmative obligation</u> to engage in pretrial discovery in a <u>responsible</u> manner that is <u>consistent with the spirit and purposes of Rules 26 through</u>

10

37." <u>Kinetic Concepts, Inc. v. ConvaTec Inc.</u>, 268 F.R.D. 226, 242 (M.D.N.C. 2010) (emphasis in original) (quoting Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g)). "[T]he spirit of the [R]ules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues . . . ." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment; <u>see also</u> <u>Mills</u>, 259 F.R.D. at 130 ("The civil discovery process is to be engaged in cooperatively."); <u>Wagner v. St. Paul Fire & Marine Ins. Co.</u>, 238 F.R.D. 418, 422 (N.D. W. Va. 2006) (observing that "[g]amesmanship" in discovery "is not allowed"). Consequently, the Rules "oblige[] each attorney to <u>stop and think</u> about the legitimacy of a discovery request, a response thereto, or an objection" before making such request, response, or objection. Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g) (emphasis added); <u>accord</u> <u>id.</u> (explaining that the Rules "require[] the lawyer to pause and consider the reasonableness of his request, response, or objection").

Notwithstanding these obligations, "hardball discovery is still a problem in some cases." <u>Kinetic</u>, 268 F.R.D. at 243 (internal quotation marks and alterations omitted). The Rules thus authorize litigants to bring unresolved discovery disputes before a court through either a motion to compel discovery or a motion for protective order. <u>See</u> <u>id.</u> Each of these motions requires the

11

moving party to certify "that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1); <u>accord</u> Fed. R. Civ. P. 37(a)(1) ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."). As our Local Rules indicate, this Court takes the parties' good-faith conferral obligations seriously:

> The Court will not consider motions and objections relating to discovery unless moving counsel files a certificate that after personal consultation and diligent attempts to resolve differences the parties are unable to reach an accord. The certificate shall set forth the date of the conference, the names of the participating attorneys, and the specific results achieved. It shall be the responsibility of counsel for the movant to arrange for the conference and, in the absence of an agreement to the contrary, the conference shall be held in the office of the attorney nearest the court location where the initial pretrial conference was convened or, in the absence thereof, nearest to Greensboro. Alternatively, at any party's request, the conference may be held by telephone.

M.D.N.C. LR 37.1(a). Finally, as with other written motions, any motion to compel or motion for protective order must "be set out in a separate pleading" and, unless resolved under the expedited procedures of Local Rule 37.1(b), must "be accompanied by a brief." M.D.N.C. LR 7.3(a).

In addition to these general discovery precepts, the Rules impose specific additional obligations in circumstances where the

"power of the lawyer as officer of the court" engenders "increased responsibility and liability for the misuse of this power." Fed. R. Civ. P. 45 advisory committee's notes, 1991 Amendment, Subdivision (a). In that regard, before serving a subpoena duces tecum on a nonparty, counsel must serve "a notice and a copy of the subpoena . . . on each party." Fed. R. Civ. P. 45(a)(4). This notification requirement exists, in part, to allow a party to object to both the substance of the subpoena and its service on the nonparty. See Burch v. P.J. Cheese, Inc., No. 2:09-CV-1640, 2010 WL 9081738, at *2 n.2 (N.D. Ala. Aug. 20, 2010). Failure to comply with the Rule 45 notice requirement provides grounds for quashing a subpoena. See F.D.I.C. v. Kaplan, No. 8:14-CV-2484-T-27JSS, 2015 WL 4744361, at *2 (M.D. Fla. Aug. 10, 2015) (citing Firefighter's Inst. for Racial Equal. ex rel. Anderson v. City of St. Louis, 220 F.3d 898, 903 (8th Cir. 2000)); see also, e.g., Murphy v. Board of Educ. of Rochester City Sch. Dist., 196 F.R.D. 220, 221-22 (W.D.N.Y. 2000) (explaining that, in response to issuance of subpoenas without notice, "the [c]ourt quashed all of the twelve offending subpoenas").

II.  Defendants' Motions to Compel

Any evaluation of Defendants' motions to compel must begin with the class named Plaintiff seeks to certify. Per the Complaint, the putative collective action class consists of "[a]ll current and/or former kitchen employees of Defendants who were

13

hourly or salaried employees whose primary duties were non-exempt work, who were not compensated for all of their hours worked, including minimum wage and/or time and one-half for hours worked above forty (40) per week." (Docket Entry 1, ¶ 37; <u>see also</u> Docket Entry 15 at 2 (defining the class as "[a]ll current and/or former employees of Defendants . . . who were hourly or non-fixed salaried kitchen employees from March 2012 through the present whose primary duty was non-exempt work, and who were not compensated minimum wage for all hours worked and/or time and one-half for hours worked above forty (40) per week").)  The Court's June 30, 2015 Order provided for limited discovery on factual issues related to named Plaintiff's attempt to certify this class.

## A.  Conferral Obligations

Before addressing the merits of the motions to compel, the Court will consider the Rule 37 prerequisite that the parties engage in a good-faith attempt to resolve this dispute without judicial intervention.  In conducting this analysis, the Court begins with Plaintiffs' Responsive Motion, which, as discussed below, contends that Defendants failed this prerequisite.

### 1.  Motion Papers

Plaintiffs present the Responsive Motion as a "Supplemental Response in Opposition to Defendants' Motion to Compel . . . [and] 'Amended' Motion to Compel." (Docket Entry 46 at 1.)  Plaintiffs' approach likely stems from the intertwined nature of Defendants'

14

two motions to compel. For instance, Defendants' Supplemental Motion "incorporate[s] by reference" portions of their original Motion to Compel. (<u>See, e.g.,</u> Docket Entry 39 at 2.) Likewise, Defendants' memorandum of support for the Supplemental Motion purports to "incorporate here by reference [Defendants'] Memorandum in Support of Defendants' Motion to Compel . . . in its entirety." (Docket Entry 40 at 1.)

In addition, the Supplemental Motion asserts that Defendants satisfied their Local Rule 37.1(a) obligations for the Supplemental Motion through the original Motion to Compel. (Docket Entry 39 at 5 ("In connection with the First Motion to Compel, Defendants complied with Local Rule 37.1 and attempted to confer in good faith with Plaintiff[s'] counsel in an effort to secure the requested information and appropriate objections in the depositions. Unfortunately, that effort was not successful and Plaintiffs' counsel did not alter the pattern of objections in [opt-in Plaintiff's] deposition.").) Moreover, the Supplemental Motion seeks an order, <u>inter alia</u>, "requiring Plaintiff to pay Defendants' expenses incurred in filing their First and Amended Motion to Compel." (<u>Id.</u> at 6.) Finally, Defendants seek relief on the Amended Motion to Compel as follows: "Based on the reasoning and legal authority set forth in the Memorandum in Support of the First Motion to Compel (Doc. 28), Defendants request the Court to enter

an order granting both the First Motion to Compel and the Amended Motion to Compel." (Docket Entry 40 at 2.)

### 2. Certification Requirements

In the Responsive Motion, Plaintiffs oppose the Motion to Compel and the Supplemental Motion on the grounds that Defendants neither (i) provided Local Rule 37.1(a)'s good-faith conferral certification in either motion nor (ii) engaged in a good-faith attempt to resolve these disputes before moving to compel. (Docket Entry 45 at 3-6.) By contrast, Plaintiffs' initial response to Defendants' Motion to Compel lacks the Local Rule 37.1 certification contention and raises Defendants' good-faith conferral obligations at best obliquely. (See Docket Entry 32 at 18 (requesting an award of attorney's fees because "it can hardly be said that Defendants made a good faith attempt to resolve the discovery dispute before filing their motion").)

Defendants did fail to include a separate Rule 37 certification in their motions to compel. Nevertheless, Defendants assert in each motion that they attempted to confer with Plaintiffs before filing their motions to compel. (See Docket Entry 27 at 8; Docket Entry 39 at 5.) Pursuant to Rule 11, Defendants' counsel's signature on, and submission to the Court of, these motions is a representation that these good-faith conferral "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). In light of Rule 11 and the fact that Plaintiffs "could and should have made

16

[the certification argument] in their response to the [Motion to Compel]," Kinetic, 268 F.R.D. at 249 n.33, the Court will exercise its discretion and decline to sanction Defendants for failure to comply with the specific certification details of Local Rule 37.1(a). See M.D.N.C. LR 83.4(b) ("The imposition of sanctions for violation of a local rule is discretionary with the Court."). The Court, however, cautions both parties to strictly adhere to Local Rule 37.1(a) for any other discovery motions in this case.[7]

### 3. Substantive Conferral Requirements

Having disposed of the certification particulars, the Court turns to the substantive issue of whether Defendants adequately conferred with Plaintiffs prior to bringing the Motion to Compel and Supplemental Motion.

The Court begins this evaluation with the dispute regarding opt-in Plaintiff's deposition location. On July 28, 2015, Defendants scheduled opt-in Plaintiff's deposition for the morning of August 12, 2015, in Raleigh, North Carolina. (Docket Entry 27-2 at 2.) Ten days later, Plaintiffs' counsel asserted that opt-in Plaintiff would not appear in person for this deposition. (Docket

---

[7] The Court further advises Defendants to refrain from extensively "rely[ing] on previous filings" and "incorporating by reference" components of their motions and supporting briefs (see, e.g., Docket Entry 49 at 2; Docket Entry 24 at 2, 5; Docket Entry 28 at 3; Docket Entry 39 at 2; Docket Entry 40 at 1-2), lest the Court adopt the practice of counting such incorporated sections against the applicable page limits. See Dillon v. BMO Harris Bank, N.A., No. 1:13-cv-897, Docket Entry 148 at 2 (M.D.N.C. June 30, 2015).

Entry 27-4 at 2.)[8]   The parties exchanged a series of emails and
letters over the next week, ultimately agreeing to conduct opt-in
Plaintiff's deposition remotely, but failing to agree on which
party would bear the associated videoconference expenses.  (See,
e.g., Docket Entry 27-4 at 1-2; Docket Entry 27-5 at 1-6; Docket
Entry 32-1 at 2-7, 10-11.)

Throughout this exchange, Plaintiffs maintained their position
that Defendants would have to pay for an Ohio deposition if they
wished to depose opt-in Plaintiff.  (See, e.g., Docket Entry 27-5
at 1-6; Docket Entry 32-1 at 11.)  Plaintiffs' final reiteration of
that position occurred on August 13, 2015, in response to a letter
detailing Defendants' concerns regarding the method and schedule of
opt-in Plaintiff's deposition.  (Docket Entry 32-1 at 5-7, 10-11.)
Per the Text Order, discovery concluded the following day, August
14, 2015.  Defendants filed their Motion to Compel on August 14,
2015, the presumptive deadline for filing any motion to compel
regarding the conditional certification discovery, see ATI Indus.
Automation, Inc. v. Applied Robotics, Inc., No. 1:09CV471, 2014 WL
3729408, at *2 n.2 (M.D.N.C. July 25, 2014).   Under these
circumstances, Defendants sufficiently conferred regarding opt-in
Plaintiff's deposition location prior to filing their Motion to
Compel.  See Kinetic, 268 F.R.D. at 245.

_____

8 Plaintiffs' counsel's Friday evening notification left only
two business days before opt-in Plaintiff's scheduled Wednesday
morning deposition.

Plaintiffs also contend that Defendants failed to properly confer before moving to compel answers to various unanswered questions in Plaintiffs' depositions. Specifically, Plaintiffs maintain that Defendants' counsel should have agreed to contact the Court during the depositions to clarify the scope of permissible discovery. (See, e.g., Docket Entry 32 at 3, 16-18.)[9] The Court would prefer for counsel to have meaningfully conferred, either before or during the depositions, about the scope of permissible

_____

9 Plaintiffs state that "there is *no justification* for Defendants' counsel's adamant refusal to contact the Court to discuss the parties' discovery dispute, request clarification of the Court's June 30, 2015 Order, and even permit Plaintiff *at that time* to seek another motion for protective order, (if Plaintiff[s'] counsel had misinterpreted the Court's Order)." (Docket Entry 32 at 17-18 (emphasis in original).) This statement appears to reflect a few misconceptions. First, this Court's expedited resolution procedures only encompass disputes that the parties agree the Court can resolve without briefing through a 30-minute telephone conference or one-hour hearing. See M.D.N.C. LR 37.1(b). Although resolution of this discovery dispute could conceivably have occurred in such an expedited fashion given that it rests on the parties' conceptual differences regarding the permissible scope of discovery, the parties' copious briefing clearly shows an at least equally plausible basis to conclude otherwise. Thus, Plaintiffs cannot fault Defendants for refusing to seek expedited resolution of this discovery dispute. Moreover, the Rules authorized Defendants to either "complete or adjourn the [depositions] before moving [to compel]" Plaintiffs' answers. Fed. R. Civ. P. 37(a)(3)(C). Plaintiffs' counsel did not have similar leeway to instruct her clients to refuse to answer questions with which she disagreed. See Fed. R. Civ. P. 30(c)(2). Instead, if Defendants' counsel persisted in asking objectionable questions, Plaintiffs' counsel should have moved for a protective order regarding the depositions. Fed. R. Civ. P. 30(d)(3)(A). Plaintiffs did not need Defendants' consent to suspend either deposition to seek such an order. Id.

discovery questions under the Text Order.[10]  Had counsel done so,
perhaps they could have resolved some of their disagreement,
forestalling the need for judicial intervention.  See Hernandez v.
Hendrix Produce, Inc., 297 F.R.D. 538, 540 n.3 (S.D. Ga. 2014)
(recognizing that "meaningful consultation can lead to informal
resolution and thus conservation of court resources").  Had those
negotiations failed, counsel could then have compiled a list of
disputed questions to bring before the Court, either through the
expedited discovery procedures of Local Rule 37.1(b) or regular
motions practice.  Such an approach would have better served all
concerned.

Nevertheless, the Court cannot conclude that Defendants failed
to satisfy their conferral obligations.  During each deposition,
counsel discussed their differing understandings of the permissible
scope of discovery.  (See, e.g., Docket Entry 36-1 at 7-9; Docket
Entry 39-1 at 5-7, 68-70.)  The day after the first deposition,
Defendants' counsel sent a letter to Plaintiffs' counsel
specifically detailing Defendants' concerns regarding Plaintiffs'
counsel's instruction not to answer a litany of questions during
named Plaintiff's deposition.  (Docket Entry 32-1 at 7-8.)
Plaintiffs' response to that letter acknowledges that "the parties

_____

10  In particular, given the manner in which named Plaintiff's
deposition unfolded and the six-day period between that deposition
and opt-in Plaintiff's deposition, the parties should have
consulted prior to the latter deposition.

20

will not be able to reach any agreement on the issues outlined in [Defendants'] letter." (Docket Entry 32-1 at 10.) Defendants then moved to compel on the presumptive deadline for such motions. In these circumstances, the Court finds that Defendants sufficiently conferred before bringing their motions to compel Plaintiffs' deposition answers. See Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 193, 197-98 (N.D. W. Va. 2000) (concluding that party's detailed letter satisfied conferral obligations and explaining that further conferral efforts "would not likely have been successful in resolving this discovery dispute").

By contrast, Defendants did not satisfy their conferral obligations before moving to compel documents responsive to the Requests. Defendants' August 13th letter specifically references only one Request, Request 11, which demands various financial forms showing moneys received from Defendants. (Docket Entry 32-1 at 7.) Although "both Plaintiffs objected to" this request, named Plaintiff produced "a series of check stubs for wages paid by Vesuvio's II to [named Plaintiff]." (Id.) During her deposition, "however, [named Plaintiff] testified that she deposited both cash and checks from [Defendants] into a bank account and that she may have received a W-2 form." (Id.) Defendants complain that Plaintiffs' counsel "refused to allow questioning about the bank [named Plaintiff] uses or any other information about that account, despite the fact that these documents are relevant to the material

21

inquiry about both the amount and timing of wage payment [named Plaintiff] received as well as her credibility on this and other issues." (Id.)  With no further explanation of why Plaintiffs should produce "these [unspecified] documents" — and without addressing any of Plaintiffs' objections to production — Defendants' letter demands that Plaintiffs immediately agree to "produce these documents and other documents as identified in the Request for Production served on both plaintiffs." (Id. at 5, 7.)

Detailed correspondence outlining the deficiencies in discovery responses and the reasons the requesting party needs the requested information can satisfy a party's Rule 37(a) conferral obligations if such correspondence permits sufficient time for the opposing party to respond.  See Kinetic, 268 F.R.D. at 244-46; Kidwiler, 192 F.R.D. at 197-98.  Defendants' letter does not meet this standard.  First, it demands production of documents in response to all the Requests, but does not discuss any Request other than Request 11.  Second, it does not sufficiently explain Defendants' entitlement to any additional materials in response to Request 11, and it does not address Plaintiffs' objections to Request 11.  Third, it provides an insufficient period for Plaintiffs to respond to the demand for additional materials: notwithstanding that Plaintiffs had responded to the Requests 10 days previously, Defendants permitted Plaintiffs only a few hours to accede to their demand for additional productions.  Accordingly,

because Defendants failed to confer as mandated by Rule 37(a), the Court will deny Defendants' request to compel the production of documents. See Ambu, Inc. v. Kohlbrat & Bunz Corp., No. 5:99CV20, 2000 WL 17181, at *2 (W.D.N.C. Jan. 6, 2000) ("[T]he fact that Defendants did not confer with opposing counsel and attempt to resolve this dispute before filing the motion to compel is sufficient reason to deny the motion."); see also M.D.N.C. LR 83.4.[11]

## B. Deposition Location

Having resolved the conferral issue, the Court turns to the merits of Defendants' motions, beginning with the deposition location dispute. In their Motion to Compel, Defendants seek expenses related to rescheduling opt-in Plaintiff's deposition as a videoconference deposition from Ohio. (Docket Entry 27 at 4-5, 9.)[12] Defendants assert that Plaintiffs' counsel acted improperly

---

[11] Defendants' request for additional documents also fails on its merits. At the certification stage, the Court does not evaluate credibility, resolve factual disputes, or delve into the merits of the litigation. Adams, 2015 WL 1279544, at *10. Thus, to the extent financial documents bear upon named Plaintiff's credibility (see Docket Entry 28 at 8) or the question of whether "Defendants paid [named] Plaintiff the wages due to her" (Docket Entry 27 at 5), those issues lie outside the limited class certification discovery authorized by the Text Order. See Butler v. DirectSAT USA, LLC, 876 F. Supp. 2d 560, 570-71 (D. Md. 2012).

[12] Defendants' August 13th letter enumerates these expenses as "the video conferencing expenses at two sites, [in North Carolina] and in Ohio, another full day of translator services, as well as a half day of translator services for August 12, 2015 because of the late notice in cancelling [opt-in Plaintiff's] (continued...)

by belatedly refusing to produce opt-in Plaintiff for his duly noticed deposition in North Carolina, thereby increasing the expense of this deposition. (See Docket Entry 28 at 10-13.) Plaintiffs oppose this request on the theory that courts in FLSA actions frequently permit remote depositions of opt-in plaintiffs at defendants' expense. (See Docket Entry 32 at 13-15.)

In resolving this dispute, the Court will first address Plaintiffs' counsel's attempt to unilaterally establish the location for opt-in Plaintiff's deposition. The Rules generally permit the party noticing the deposition to pick the deposition location. See Fed. R. Civ. P. 30(b)(1). Here, Defendants' counsel notified Plaintiffs' counsel on July 22, 2015, that Defendants intended to depose Plaintiffs in North Carolina. (Docket Entry 27-1 at 1-2.) On July 28, 2015, Defendants served notices for depositions of Plaintiffs in North Carolina on August 12, 2015. (See Docket Entry 27-2.) If opt-in Plaintiff could not attend the deposition as noticed, Plaintiffs' counsel should have promptly contacted opposing counsel and attempted to negotiate an alternative deposition location.[13] Yet Plaintiffs' counsel waited

_____

12(...continued)
deposition." (Docket Entry 32-1 at 6.)

13 Had the parties not agreed to a remote deposition on August 18, 2015 — which necessitated an extension of the discovery deadline — opt-in Plaintiff's only recourse against a North Carolina deposition would have been to seek a protective order. Beach Mart, Inc. v. L & L Wings, Inc., 302 F.R.D. 396, 406 (continued...)

10 days, until the evening of Friday, August 7, 2015, to indicate that opt-in Plaintiff would have difficulty attending a North Carolina deposition because he currently resides in Ohio. (Docket Entry 27-4 at 2.) Plaintiffs' counsel's tardy notification meant that the parties had only two business days to negotiate alternative arrangements before opt-in Plaintiff's scheduled deposition on the morning of August 12, 2015. In these circumstances, the Court concludes that Plaintiffs' counsel should properly bear any expense associated with cancelling the August 12th deposition and scheduling on an expedited basis the August 18th deposition.

The Court next considers the expense associated with conducting opt-in Plaintiff's deposition via videoconference. Courts frequently order remote depositions of FLSA plaintiffs at the expense of FLSA defendants. See Brasfield v. Source Broadband Servs., LLC, 255 F.R.D. 447, 450 (W.D. Tenn. 2008); see also, e.g., Angamarca v. Da Ciro, Inc., 303 F.R.D. 445, 448 (S.D.N.Y. 2012);

_____

13(...continued)
(E.D.N.C. 2014) ("Put simply and clearly, absent agreement, a party who for one reason or another does not wish to comply with a notice of deposition must seek a protective order. Once the deposition notice is served, the [receiving party] bears the burden of demonstrating *to the court* that the notice is objectionable or insufficient." (emphasis in original; internal quotation marks and citation omitted)); see also New England Carpenters Health Benefits Fund v. First DataBank, Inc., 242 F.R.D. 164, 166 (D. Mass. 2007) ("What is not proper practice is to refuse to comply with the notice, put the burden on the party noticing the deposition to file a motion to compel, and then seek to justify non-compliance in opposition to the motion to compel.").

<u>Gee v. Suntrust Mortg., Inc.</u>, No. 10-CV-01509, 2011 WL 5597124, at
*3 (N.D. Cal. Nov. 15, 2011).  In so ruling, such courts emphasize
the expense-savings rationale behind FLSA collective actions and
the fact that opt-in plaintiffs "did not choose the forum; the
forum was chosen for them."  <u>Brasfield</u>, 255 F.R.D. at 450.  Courts
do not, however, uniformly mandate that such depositions occur
remotely at the sole expense of defendants.  <u>See Hernandez</u>, 297
F.R.D. at 541 (ordering plaintiffs to contribute $1,000 towards
expense of remote depositions); <u>Shockey v. Huhtamaki, Inc.</u>, 280
F.R.D. 598, 603 (D. Kan. 2012) (ordering plaintiffs to pay
videoconferencing expenses for remote depositions).

Aside from the mere fact that opt-in Plaintiff currently
resides in Ohio, Plaintiffs have offered little to explain their
objection to an in-person deposition in North Carolina.
Nevertheless, from the parties' correspondence and opt-in
Plaintiff's deposition testimony, the Court gleans that opt-in
Plaintiff's work schedule made it difficult for him to travel to
North Carolina for a deposition.  (<u>See</u> Docket Entry 27-5 at 1-2, 4;
Docket Entry 39-1 at 18.)  Similarly, Defendants have not explained
why they deemed a telephonic deposition insufficient for opt-in
Plaintiff's deposition, particularly given the limited nature of
discovery authorized by the Text Order.  <u>See Brasfield</u>, 255 F.R.D.
at 450 (observing that "the [d]efendants have given no reason why
the subject matter to be covered in the out-of-state opt-in

plaintiffs' depositions is so significant that it requires an in-person oral deposition" and ordering either remote or in-person depositions in each such "plaintiff's city of residence"); Morangelli v. Chemed Corp., No. 10 CIV 00876, 2011 WL 7475, at *2 (E.D.N.Y. Jan. 1, 2011) (ordering evening or weekend telephonic deposition of FLSA opt-in plaintiff "who cannot afford to take time off from work"); see also Stephens v. 1199 SEIU, Civil Action No. 07-0596, 2011 WL 2940490, at *2 (E.D.N.Y. July 19, 2011) (ordering telephonic deposition and observing that "[d]enying a plaintiff's request [for a telephonic deposition] based on such an argument [about defendant's inability to see plaintiff's demeanor and use of documents during the deposition] would in effect be tantamount to repealing [Rule] 30(b)(4)" (internal quotation marks and alteration omitted)). Given these circumstances and the policy rationales underlying the FLSA, the Court concludes that the parties should split the videoconferencing expenses associated with opt-in Plaintiff's August 18th deposition.[14]

C. Deposition Questions

In their motions to compel, Defendants also contest Plaintiffs' counsel's objections and instructions to Plaintiffs not to answer certain questions in their depositions because, in Defendants' view, these "improper instructions did not enforce any

_____

14 In so ruling, the Court expresses no opinion on the propriety of expense-shifting in any future depositions, as each situation may differ.

27

actual limitation set by the Court." (Docket Entry 28 at 7.)
Accordingly, Defendants ask the Court to order "Plaintiff[s']
Counsel to comply in reconvened depositions of Plaintiff[s] with
this Court's local rules regarding objections and instructions not
to respond to questions propounded by Counsel for Defendants."
(Docket Entry 27 at 8; Docket Entry 39 at 6.) In response,
Plaintiffs defend these instructions on the ground that "the
information sought in [Plaintiffs'] deposition[s] had absolutely *no*
relevance to questions related to Plaintiff's motion for
conditional certification." (Docket Entry 32 at 6 (emphasis in
original).) Plaintiffs further assert that, in any event, the
Court should deny the motions to compel because the requested
information "falls outside the scope of discovery" and/or "the
circumstances render compelling an answer to the question[s]
otherwise unnecessary." (<u>Id.</u> at 4 (internal quotation marks
omitted).) Although the Court does not condone either party's
behavior regarding these depositions, the Court will deny
Defendants' request for reconvened depositions in this conditional
class certification phase.

Before delving into the disputed questions, a few observations
about the depositions are necessary. First, named Plaintiff's
deposition lasted for more than four and a half hours (<u>see</u> Docket
Entry 36-1 at 1, 141) and opt-in Plaintiff's deposition lasted
approximately five hours (<u>see</u> Docket Entry 39-1 at 1, 101).

28

Moreover, in their respective depositions, Plaintiffs testified extensively about their duties at Vesuvio's II, their employment history with Defendants, other Vesuvio's II kitchen workers, and Defendants' pay practices. (See, e.g., Docket Entry 36-1 at 15-24, 41-42, 47-49, 52-55, 59-64, 69-104, 110-14, 131-35, 138-40; Docket Entry 39-1 at 14-17, 19-58, 63-67, 71-72, 74-75, 81-94, 98-99.)[15] This context informs the Court's analysis of whether it should compel answers to the contested deposition questions.

Turning to the parties' specific arguments about the contested questions, Defendants first seek answers to "standard questions related to background and credibility." (Docket Entry 45 at 7.) Defendants' "general background question[]" category includes questions related to Plaintiffs' family and marital status, birthplaces, employment and educational histories, and "whether [opt-in Plaintiff] decided to join the lawsuit." (Docket Entry 39 at 2-3; Docket Entry 45 at 7-9.) Meanwhile, Defendants' "credibility" category includes Plaintiffs' criminal histories (Docket Entry 45 at 7-8) and presumably also encompasses whether named Plaintiff "has told the truth to Defendants" or made "prior claims related to wages" (Docket Entry 27 at 7).

At the conditional certification stage, "the Court does not . . . make credibility determinations." Adams, 2015 WL 1279544, at

---

15    Named Plaintiff also testified extensively about her report to the Department of Labor regarding Defendants. (Docket Entry 36-1 at 25-41.)

29

\*11 (internal quotation marks omitted); see also Butler v. DirectSAT USA, LLC, 876 F. Supp. 2d 560, 570-71 (D. Md. 2012) (rejecting credibility-based challenge to conditional certification premised on evidence "contradict[ing p]laintiffs' assertions"). Furthermore, none of these questions are relevant to the issue before the Court at the conditional certification stage, namely, whether named Plaintiff has presented at least some modest evidence that there may be additional kitchen employees with similar legal claims against Defendants for unpaid minimum wages and overtime. See Enkhbayar Choimbol v. Fairfield Resorts, Inc., 475 F. Supp. 2d 557, 564 (E.D. Va. 2006). The Court therefore finds that the burden and expense of obtaining the requested discovery outweigh its usefulness, "especially in light of the time already spent on discovery and the expense and inconvenience that would be created by resuming the depositions," Banks v. Office of Senate Sergeant-at-Arms and Doorkeeper, 233 F.R.D. 1, 7 (D.D.C. 2005). Pursuant to Rule 26(b)(2)(C), the Court will not compel Plaintiffs to answer these questions at this time. See id.

Defendants also maintain that Plaintiffs' counsel improperly instructed named Plaintiff not to answer questions about a time sheet allegedly signed by named Plaintiff (see Docket Entry 27 at 6; Docket Entry 45 at 4-5), which she denies signing (Docket Entry 36-1 at 108). Plaintiffs' counsel did not, in fact, instruct named Plaintiff to refuse to answer questions about this document. (See

30

id. at 108-16.) Plaintiffs' counsel did, however, object to questions about the validity of named Plaintiff's signature on certain checks. (Id. at 115-16.) Defendants contend that the Court should compel named Plaintiff to answer their questions about the validity of the signatures on these "checks and other documents purportedly signed by her," including Defendants' Rules and Regulations Contract — which named Plaintiff also denies signing (id. at 44-46) — and a social security card and permanent residence card bearing her name. (Docket Entry 45 at 5-6.) Defendants rest this demand on the theory that they "should be entitled to inquire whether the documents which bear [named Plaintiff's] signature are genuine and legitimate comparators for documents she now claims to have been forged." (Id. at 6.)

Even assuming the general relevance of this contested line of inquiry, the Court cannot resolve factual disputes at this stage of the litigation. Adams, 2015 WL 1279544, at *11; see also Butler, 876 F. Supp. 2d at 571 (observing that "[t]he fact that [Plaintiffs'] allegations are disputed by . . . [D]efendants does not mean that [P]laintiffs have failed to establish a colorable basis for their claim that a class of similarly situated plaintiffs exist[s]" (alterations in original; internal quotation marks omitted)). Defendants themselves acknowledge that named Plaintiff denies signing the disputed documents (including a purported loan agreement with Individual Defendant). (See Docket Entry 45 at 5.)

31

As the Court cannot resolve the validity of these documents at the conditional certification stage, the burden and expense of the proposed discovery presently outweigh its potential benefits. See Banks, 233 F.R.D. at 7. Pursuant to Rule 26(b)(C), the Court denies Defendants' request to compel this discovery. See id.

On a related note, Defendants maintain that the Court should require Plaintiffs to answer "follow-up questions" on three topics to which Plaintiffs allegedly "opened the door" during their depositions (Docket Entry 39 at 4-5), including whether named Plaintiff has brought charges against Defendants for fraud (Docket Entry 45 at 9). The three instances of "door open[ing]" Defendants identify are irrelevant to the conditional certification determination. (See Docket Entry 39 at 4-5; Docket Entry 45 at 9.) Therefore, regardless of what "door[s]" Plaintiffs may or may not have opened, the burden and expense of compelling answers to these "follow-up questions" outweigh any conceivable benefit at this stage of the litigation, such that the Court will decline to compel answers to these "follow-up questions." See Banks, 233 F.R.D. at 7.

Defendants further assert an entitlement to answers about the alleged loan with Individual Defendant. (Docket Entry 27 at 6, 7; Docket Entry 45 at 4.)[16] Defendants insist that named Plaintiff's

_____

16 Named Plaintiff disputes the existence of this loan. (See Docket Entry 36-1 at 121-23.)

purported "financial and other obligations to Defendants present conflicts of interest that make her dissimilar to other putative plaintiffs and an inappropriate representative for any collective action." (Docket Entry 45 at 4.) Under this same theory, Defendants also pursue answers regarding named Plaintiff's alleged request for Individual Defendant "to act as the guardian for [named] Plaintiff's daughter." (Docket Entry 27 at 5-7.)

FLSA collective actions do not have the same adequacy of representation requirements as Rule 23 class actions. Robinson v. Empire Equity Grp., Inc., Civ. Action No. 09-1603, 2009 WL 4018560, at *1 n.8 (D. Md. Nov. 18, 2009); see also Holmes v. Charleston Ret. Inv'rs, LLC, ___ F. Supp. 3d ___, ___, No. 2:13-cv-1713, 2014 WL 10122868, at *5 (D.S.C. Feb. 25, 2014) (rejecting claim that purported conflict between classes precluded conditional certification); Essame v. SSC Laurel Operating Co. LLC, 847 F. Supp. 2d 821, 828 (D. Md. 2012) ("Because of the special policy considerations that the FLSA comprehends, Rule 23 standards are generally inapplicable to FLSA collective actions."). Instead, FLSA conditional certification asks whether named Plaintiff and other putative class members "raise a similar legal issue as to . . . nonpayment o[f] minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." McLaurin, 271 F.R.D. at 469 (internal quotation marks omitted). As these alleged conflicts of

33

interests have no material impact on the similarly situated analysis for conditional certification, the Court concludes that the burden and expense of compelling this discovery outweigh its possible benefits. See Banks, 233 F.R.D. at 7. The Court therefore denies Defendants' request to compel answers to these questions.

In addition, Defendants request that the Court compel Plaintiffs to disclose both the names of the banks Plaintiffs use and whether named Plaintiff reported her income to the Internal Revenue Service. (Docket Entry 39 at 3; Docket Entry 45 at 2-3.) Defendants hope to use this information to find documents "that would corroborate (or not) [named Plaintiff's] claim about Defendants' pay practices." (Docket Entry 45 at 3.) Defendants also seek information regarding any other jobs Plaintiffs may have had while in Defendants' employ. (Docket Entry 27 at 6-7; Docket Entry 39 at 5; Docket Entry 45 at 9.) Although the motions to compel do not articulate their reasoning, Defendants presumably seek this information to "corroborate (or not)" Plaintiffs' claims regarding their hours at Vesuvio's II. These questions do not pertain to conditional certification. See Butler, 876 F. Supp. 2d at 570 (rejecting considerations that "delve[] too deeply into the merits of the dispute at this initial notice stage" (internal quotation marks omitted)). Accordingly, the Court concludes that

34

the burden and expense of this discovery outweigh its potential benefits and denies Defendants' request regarding these questions.

Next, Defendants seek to compel opt-in Plaintiff to testify about (i) whether named Plaintiff telephoned opt-in Plaintiff "around mid February" to tell him that Defendants' kitchen employees "were compensated in the same fashion and subject to the same illegal policies" (Docket Entry 39-1 at 89-90) and (ii) "any pecuniary gain" offered to him for participating in the lawsuit (id. at 96-97). Similarly, notwithstanding that named Plaintiff testified regarding times when she and opt-in Plaintiff discussed their duties, their hours, Defendants' pay practices, and Defendants' recordkeeping policies, Defendants demand to know "the last time [named Plaintiff] talked to [opt-in Plaintiff]." (Docket Entry 36-1 at 73-76, 78, 83-85.) These questions contravene the Text Order's prohibition on discovery into "any equitable defenses related to alleged recruitment of potential plaintiffs as proposed by Defendant[s] in [Defendants'] Rule 26f Report."

Finally, Defendants demand that opt-in Plaintiff answer questions about a Department of Labor investigation mentioned in one of his affidavits. (Docket Entry 39 at 3; Docket Entry 39-1 at 68-70.) The Supplemental Motion identifies this affidavit as "(Doc 18-7)" (Docket Entry 39 at 3), an attachment to the "Memorandum in Support of Plaintiff's Emergency Motion for a Protective Order to Address Defendants' Improper Communication with Putative Class

Members" (Docket Entry 18). The Text Order permits only "limited discovery pertaining to the named Plaintiff and the opt-in Plaintiff on the subject of factual issues raised by [Docket Entry] 14 Motion for Conditional Certification." The Court therefore denies Defendants' request to compel a further deposition related to the affidavit in question.

In sum, assuming, arguendo, that Plaintiffs' counsel improperly instructed her clients not to answer certain questions, the Court will not permit further questioning of Plaintiffs at this stage of the case.

### III. Plaintiffs' Responsive Motion

The Responsive Motion purports to respond to the Motion to Compel and Supplemental Motion as well as to seek a protective order regarding the scope of discovery. In presenting this hybrid response, Plaintiffs contravene Local Rule 7.3(a), which specifies that "[a]ll motions, unless made during a hearing or at trial, shall be in writing and shall be accompanied by a brief . . . . Each motion shall be set out in a separate pleading." Pursuant to Local Rule 83.4, the Court will deny the Responsive Motion for failure to comply with Local Rule 7.3(a). The Court directs the parties to negotiate in good faith regarding any future discovery in this action. See Kinetic, 268 F.R.D. at 242-43 (outlining counsels' obligations in conducting discovery); M.D.N.C. LR 37.1(a).

## IV.  Plaintiffs' Motion to Quash

Through their Motion to Quash, Plaintiffs ask the Court to quash or, alternatively, issue a protective order regarding three nonparty subpoenas that seek all documents relating to Plaintiffs in the possession, custody, or control of their putative former employers.  (See Docket Entry 29 at 1-2; Docket Entry 47 at 10.)  In response, Defendants maintain that Plaintiffs lack standing to bring the Motion to Quash.  (Docket Entry 44 at 3-6.)  As reflected by the very decision Defendants rely on in support of their standing argument (id. at 2, 4-6), each "Plaintiff has the requisite standing.  Clearly, [each] Plaintiff has a personal right or privilege in his employment . . . records, and a corresponding right to move to quash the subpoena *duces tecum* seeking those records."  Kohari v. Jessie, No. 2:13-CV-09072, 2014 WL 1338558, at *2 (S.D. W. Va. Apr. 3, 2014); see also Singletary v. Sterling Transp. Co., 289 F.R.D. 237, 239 (E.D. Va. 2012) (collecting cases finding standing to challenge subpoenas seeking employment records).  Furthermore, Defendants failure to comply with Rule 45(a)(4)'s notice requirement (see Docket Entry 29-2 at 1; Docket Entry 47 at 4 n.3) also gives Plaintiffs standing to challenge these particular nonparty subpoenas, see, e.g., Spencer v. Steinman, No. 2:96-CV-1792, 1999 WL 33957391, at *4 n.1 (E.D. Pa. Feb. 26, 1999) ("It is clear that this Court has the inherent authority to insure that a party is not deprived of the protection

37

of receiving notice of the issuance of a subpoena duces tecum to a non-party . . . .").

Because Defendants failed to comply with Rule 45(a)(4)'s prior notice requirement, the Court will quash the nonparty subpoenas. See, e.g., F.D.I.C., 2015 WL 4744361, at *3 ("Because [p]laintiff failed to provide prior notice of the Subpoena, as required by Rule 45(a)(4), the Subpoena is void and unenforceable."); Martinez v. Target Corp., 278 F.R.D. 452, 453 (D. Minn. 2011) (rejecting argument that plaintiff was not prejudiced by defendant's failure to comply with Rule 45(a)(4), explaining that "[t]he prejudice to [plaintiff] is anticipated by the existence of Rule 45[(a)(4)]. Therefore, it is proper to quash the subpoena."); Murphy, 196 F.R.D. at 221-22 (explaining that, because counsel failed to comply with Rule 45(a)(4), "the [c]ourt quashed all of the twelve offending subpoenas and directed [relevant] counsel to immediately turn over all of the documents that had been provided in response to the subpoenas").[17] Accordingly, Defendants must certify to the Court that they have returned or destroyed all copies of any

---

[17] Defendants defend the subpoenas by pointing to "[t]he fact that the subpoenas have already been answered without objection" by the nonparty employers. (Docket Entry 44 at 8.) This contention ignores a primary concern underlying the notice requirement, i.e., that a subpoena target which lacks a protected interest in the requested materials may produce subpoenaed documents without regard to the interest of the affected party. See Spencer v. Steinman, 179 F.R.D. 484, 489 (E.D. Pa. 1998), order vacated in part on reconsideration, No. 2:96-CV-1792 ER, 1999 WL 33957391 (E.D. Pa. Feb. 26, 1999).

materials produced pursuant to the August 7th nonparty subpoenas. See Burch, 2010 WL 9081738, at *3 (quashing subpoena issued to plaintiff's new employer without notice and directing that, "[t]o the extent [defendant] has already obtained employment records . . . pursuant to the subpoena," defendant must "return or destroy the records, and to notify [p]laintiff of the same"); Spencer, 1999 WL 33957391, at *4 n.1 (concluding that federal courts "ha[ve] the inherent authority to insure that a party is not deprived of the protection of receiving notice of the issuance of a subpoena duces tecum to a non-party," including by making the party violating Rule 45(a)(4) "disgorge[] the fruits of the violation").

The Court appreciates that Defendants might, at some future stage in this litigation, seek to issue nonparty subpoenas to Plaintiffs' alleged former employers in conformity with Rule 45(a)(4). Accordingly, in the interests of judicial efficiency, the Court will address one point raised by Defendants' opposition to the Motion to Quash. In their response, Defendants requested that the Court confine any relief on the Motion to Quash to (i) "modify[ing] the subpoenas to limit the scope of the employment documents Defendants can use to [certain specified documents]" and (ii) issuing a "protective order . . . limited to confidential information such as medical or other protected information in the personnel files." (Docket Entry 44 at 10.) Particularly in light of Defendants' avowed willingness to "enter[] into a reasonable

39

consent protective order" with Plaintiffs (Docket Entry 45 at 9 n.1), the parties should attempt in good faith to negotiate a mutually acceptable protective order. Similarly, Defendants should consider whether any future subpoenas should demand "all documents relating to [Plaintiffs]." See Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC, No. 1:12CV27, 2014 WL 6686727, at *4-5 (M.D.N.C. Nov. 26, 2014) (analyzing burden and overbreadth issues regarding "relating to" language in subpoena request).

## V. Expenses

Defendants and Plaintiffs each request expenses, including attorney's fees, that they have incurred in bringing and defending against the Motion to Compel, Supplemental Motion, and Motion to Quash. (Docket Entry 27 at 9; Docket Entry 32 at 19; Docket Entry 39 at 6; Docket Entry 47 at 10.)[18] The Court will treat the Motion to Compel and Supplemental Motion as a whole for purposes of resolving these requests. Rule 37(a)(5)(C) provides that the Court may apportion expenses when a motion to compel is granted in part and denied in part, as happened here. The Court denies expense-shifting under the circumstances of this case, where the parties each significantly contributed to the instant discovery dispute.[19]

---

18  Plaintiffs included their request for expenses relating to the Motion to Quash in their opposition to the Motion to Compel (Docket Entry 32 at 19) and their reply in support of the Motion to Quash (Docket Entry 47 at 10).

19  Were the Court to treat the Supplemental Motion and Motion
(continued...)

The Court similarly declines to allocate expenses for the Motion to Quash. Rule 45(d)(1) only authorizes such awards to protect "a person subject to the subpoena." Cf. Fed. R. Civ. P. 45(d)(3) (permitting quashing of a subpoena "[t]o protect a person subject to or affected by a subpoena" (emphasis added)). To the extent the Court possesses inherent authority to impose sanctions, strict limits apply. See, e.g., Spencer, 1999 WL 33957391, at *1 & n.1. In particular, the Court may utilize inherent authority to impose monetary sanctions only upon a finding of bad faith. Id. at *1 n.1. Here, the record does not warrant such a finding. Accordingly, the Court will not order any expense-shifting as to the Motion to Quash.

## CONCLUSION

The applicable procedural rules require counsel to cooperate in all stages of discovery, to carefully evaluate the propriety of their discovery conduct, and to meaningfully confer before bringing any motions to compel or for protective orders. Defendants failed

---

19(...continued)
to Compel separately for Rule 37(a)(5) purposes, it would reach the same conclusion. Pursuant to Rule 37(a)(5)(B), the Court cannot shift expenses if a motion to compel was "substantially justified or other circumstances make an award of expenses unjust." The Supplemental Motion effectively elaborates on the Motion to Compel. Defendants filed these motions separately only because opt-in Plaintiff's deposition had not occurred prior to the original August 14th discovery deadline, a situation for which Plaintiffs largely bear responsibility. Accordingly, in the circumstances of this case, expense-shifting for the Supplemental Motion remains inappropriate under Rule 37(a)(5)(B).

to confer in good faith before moving to compel further document production from Plaintiffs, and thus the Court denies Defendants' request for such relief.  Because, however, Defendants adequately conferred about the other aspects of their motions, the Court has addressed those matters on the merits.  In regard to the timing and method of opt-in Plaintiff's deposition, Plaintiffs' counsel rightly bears any expenses associated with rescheduling the deposition, but the relevant parties shall split the expense of proceeding via videoconference.  Additionally, the deposition testimony Defendants seek to compel lacks sufficient value to the conditional certification determination to warrant the burden and expense of such discovery at this juncture.  The Court further denies Plaintiffs' purported Responsive Motion for violation of Local Rule 7.3(a).  Finally, Defendants failed to comply with Rule 45(a)(4) in serving their August 7th nonparty subpoenas, and thus must disgorge any materials received pursuant to those subpoenas.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel (Docket Entry 27) and Supplemental Motion (Docket Entry 39) are **GRANTED IN PART** and **DENIED IN PART** as follows:  (i) Plaintiffs' counsel shall bear any expense related to the late cancellation of opt-in Plaintiff's August 12th deposition and the expedited scheduling of opt-in Plaintiff's August 18th deposition; (ii) opt-in Plaintiff and Defendants shall equally divide the videoconferencing expenses for the August 18th deposition; and (iii) Defendants shall

42

obtain no further deposition or document discovery from Plaintiffs at this stage of the case.

**IT IS FURTHER ORDERED** that, on or before October 23, 2015, Defendants shall serve Plaintiffs with a statement setting out (i) the expenses, if any, Defendants incurred in cancelling opt-in Plaintiff's August 12th deposition and in scheduling on an expedited basis his August 18th deposition and (ii) the videoconferencing expenses for the August 18th deposition. Failure by Defendants to comply with this Order will result in denial of any related expense-shifting.

**IT IS FURTHER ORDERED** that, if Defendants timely serve such a statement of expenses, Plaintiffs' counsel and opt-in Plaintiff shall file, on or before November 6, 2015, either: (i) a Notice indicating agreement to pay the claimed expenses; or (ii) a Memorandum of no more than five pages explaining why Plaintiffs' counsel or opt-in Plaintiff, as relevant, contests the reasonableness of the claimed expenses, along with a certification that the parties have attempted in good faith to resolve any disagreement over the reasonableness of the claimed expenses. Failure by Plaintiffs' counsel or opt-in Plaintiff to comply with this Order will result in the Court ordering, upon the filing of a Notice by Defendants of their reasonable expenses as contained in the statement they served upon Plaintiffs, the payment of such

43

expenses by Plaintiffs' counsel or opt-in Plaintiff, as appropriate.

**IT IS FURTHER ORDERED** that, on or before November 13, 2015, Defendants shall file a Response of no more than five pages to any Memorandum timely filed by Plaintiffs' counsel or opt-in Plaintiff contesting the reasonableness of the claimed expenses. Failure by Defendants to comply with this Order will result in denial of any expenses contested by Plaintiffs' counsel or opt-in Plaintiff as unreasonable.

**IT IS FURTHER ORDERED** that, on or before November 20, 2015, Plaintiffs' counsel or opt-in Plaintiff, as relevant, may file a Reply of no more than three pages to any Response timely filed by Defendants regarding the reasonableness of the claimed expenses.

**IT IS FURTHER ORDERED** that, upon completion of the foregoing briefing or the time period for such briefing, the Clerk shall refer this matter back to the undersigned Magistrate Judge for further action.

**IT IS FURTHER ORDERED** that Plaintiffs' purported Responsive Motion (Docket Entry 46) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Quash (Docket Entry 29) is **GRANTED** insofar as it seeks to quash the August 7th nonparty subpoenas. By October 23, 2015, Defendants must file a Notice certifying that they have returned or destroyed all materials received pursuant to the subpoenas.

44

**IT IS FURTHER ORDERED** that Defendants shall have until October 30, 2015, to respond to "Plaintiff's Motion for Conditional Certification Pursuant to the Fair Labor Standards Act" (Docket Entry 14).

**IT IS FURTHER ORDERED** that the parties shall negotiate in good faith in a meaningful attempt to resolve any other discovery disputes that may arise and to develop a consent protective order as to any materials entitled to protection under Rule 26(c)(1).


October 16, 2015                    _____/s/ L. Patrick Auld_____
                                    **L. Patrick Auld**
                                    **United States Magistrate Judge**

45