IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO.: 1:15-CV-227

| | |
|---|---|
| MIRIAM MARTINEZ SOLAIS, on behalf of herself and all others similarly situated and MATEO SAN AGUSTIN ALVARADO,<br><br>                Plaintiff,<br><br>           v.<br><br>VESUVIO'S II PIZZA & GRILL, INC.; and<br>GIOVANNI SCOTT D'ABBUSCO,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION PURSUANT TO THE FAIR LABOR
STANDARDS ACT**

## I.    INTRODUCTION

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., allows "similarly situated" employees to bring a collective action against their employer, requiring putative plaintiffs to "opt-in" to join the lawsuit. Although the Fourth Circuit uses a two-step approach to determine whether a case should be certified as a collective action, a plaintiff must still provide a "modest factual showing" that he/she and potential collective action members were victims of "a common policy or plan that violated the law." *Ceras-Campo v. WF P'ship,* No. 5:10CV215BO, 2011 U.S. Dist. LEXIS 12688, at *6 (E.D.N.C. Feb. 7, 2011). Because Plaintiffs here have failed to provide a factual

1

showing beyond conclusory allegations in their declarations and testimony, this Court should deny Plaintiffs' motion for conditional certification.

Plaintiffs focus on the "lenient" nature of the standard for conditional certification, stating that courts "typically grant Plaintiff's notice motions." (Dkt. 15, p. 8). Although the standard may be lenient for conditional certification, it is not non-existent; courts do not grant conditional certification in cases where there is an inadequate showing of similarly situated employees. Additionally, judicial efficiency dictates that courts not conditionally certify cases where they are certain, based in preliminary evidence, that the class will be decertified down the line.

Nevertheless, if this Court finds that Plaintiffs meet the threshold for conditional certification, the Court should reject Plaintiffs' proposed notice and consent forms. *See* Ex. C and D, Dkt. 15-3, 15-4). Courts in this Circuit routinely allow Parties to jointly propose notice before reviewing and ordering any specific form. *See Long v. CPI Sec. Sys.*, 292 F.R.D. 296 (W.D.N.C. 2013); *Adams v. Citicorp Credit Servs., Inc.*, No. 1:12CV286, 2015 U.S. Dist. LEXIS 34890 (M.D.N.C. Mar. 20, 2015); *Romero v. Mountaire Farms, Inc.,* 796 F. Supp. 2d 700 (E.D.N.C. 2011) (cases where the court ordered parties to jointly propose notice to the Court for approval). Considering the showing related to solicitation by Plaintiff offered by Defendants in their Motion for Protective Order and Memorandum in Support (Dkt. 23 and 24), Defendants request the Court to reject the notices proposed by Plaintiffs, to order the use of a neutral notice and to supervise any notice process.

2

## II.    FACTUAL BACKGROUND

Defendant Giovanni Scotti D'Abbusco operates an Italian restaurant in Roxboro, North Carolina called Vesuvio's II Pizza and Grill, Inc. (*See* Affidavit of Giovanni Scotti D'Abbusco, Dkt. 22-1 ¶ 2, 3). Named Plaintiff applied for work at Vesuvio's II in September 2013 and Vesuvio's II hired her as a kitchen assistant. (*Id*. at ¶ 6). According to Defendant Scotti D'Abbusco, too, she requested that she not be required to "clock in" using Vesuvio's II's time clock as other employees were required to do because of her difficulties with English, and Defendants agreed that she could submit written statements of her time worked. (*Id*. ¶ 8).

In her Declaration, Solais testified that she began working in 2008 and left her employment on June 18, 2014.[1] (Dkt 15-1¶ 1). She began working as a dishwasher and then as a cook, working during the pertinent period from seventy-seven to eighty-three hours per week, according to her Declaration. (*Id*. ¶ 3.) In her deposition, she testified that she was not paid by the hour, that Defendants did not maintain any recordkeeping policy for kitchen staff, that none of the kitchen staff were allowed to use a time clock (Deposition of Miriam Martinez Solais, Dkt. 36 at 92:25- 93:2) and that they were all paid only in cash. (*Id*. at 93: 13-19). In her deposition, too, she acknowledged she had only talked to three employees about the Defendants' practices toward other employees (*Id*. at 76:15-20.) In that regard, she admitted she had only spoken to (1) Melecio

---

[1] On December 12, 2014, Defendants received the first demand letter from Plaintiff's counsel Gilda Hernandez regarding Plaintiff Solais' claim (Exh 1, Att. C to Opposition to Plaintiff's Emergency Motion for Protective Order, Dkt. 22.) In that letter counsel stated that Plaintiff worked "an average of 83 hours per week from *November 24, 2011* to June 18, 2014" (Emphasis added.)

Santiago, who stopped working at the restaurant in 2012 and she never saw any of his documents (*Id*. at 74:5-17); (2) "Alex" who left employment with the restaurant in 2011 (*id*. at 75:1-76:1-4); and the Opt in Plaintiff, (*id.*). She talked with "[n]o one else." about "the recordkeeping policy for kitchen workers at Vesuvios' II."(*Id*. at 76: 15-20.)

The Named Plaintiff and Opt-in Plaintiff both testified that that they did not work together after 2012. (*Id.* at 84: 2-4); (Deposition of Mateo San Agustin Alvarado, Dkt 39-1 at 35:14-36:17.) The Opt-in Plaintiff left Vesuvio's II in June 2012 and returned to full time work in 2015. (*Id*.)

Defendants have stated that the Named Plaintiff applied for work in September 2013 and that the arrangement made with her was that she would submit paper records of her hours since she refused to use a timeclock. (Dkt. 22-1¶6-7).  In her Declaration, Solais acknowledges receiving checks in 2013 showing that she worked part-time and stated that Defendants paid her partly by check and partly in cash.( Dkt. 15-1). She testified in her deposition that all the kitchen workers were prevented from punching a timeclock and were only paid in cash. (Dkt. 36 at 93: 1-18). Each worker she identified who had the same job worked the same hours and days alongside her, according to her testimony. (*Id.* at 88:17-93)  Yet, she acknowledged that "Maria" was paid by the hour and punched a time clock by contrast to pay practices related to her, in which she received a set amount each month and did not enter her time with a time clock. (*Id*. at 80 at 15:15-23). Maria also did not work full time, like the Named Plaintiff (*Id.* at 81:4-22), and Named Plaintiff did not know whether Margarita used a time clock. (*Id.* at 83:9).  As

to another employee. "Isabella," Solais testified that she did not see her paycheck, but acknowledges that she received one (as opposed to receiving cash payments.) (*Id.* at 88:15-16).

In his Declaration Opt-in Plaintiff stated he "worked for Vesuvio's II from May 2010 to April 2013." (Dkt. 15-2). He testified in his deposition that he stopped working for Vesuvio's to work an agricultural job in June 2012, where he worked approximately six months (Dkt. 39-1 at 22:15-17). Then he worked in another restaurant for approximately a year, starting January or February of 2013, (Dkt. 39-1 at 41:2-22), which apparently paid him more money than Vesuvio's II had. He returned to work full time at Vesuvio's in 2015. (Dkt. 39-1:1-5.) Opt-in Plaintiff acknowledged having to use a time clock and receiving checks with itemized hours of work and pay starting January 2015. (*Id.* at 49:14-24).

In his deposition, Opt-in Plaintiff acknowledged that he could not identify whether he was adequately paid minimum wage or overtime pay from his pay stubs because he could not read them well enough. (*Id.* at 66:7-67:13). In spite of the statement in his Declaration that he had spoken with other dishwashers and cooks about the working conditions and pay at Vesuvio's II, (Dkt 15-2 ¶ 1), Opt-in Plaintiff acknowledged in his deposition that he had only spoken to the Named Plaintiff about these matters. (*Id.* at 89:1-90:8) Contrary to Solais's testimony, too, that all of these employees including Opt-in Plaintiff worked the same days and same schedule as she did simultaneously, Opt-In Plaintiff's testified that during 2010 to 2012, he worked only with two others and when

5

he left in 2012, he did so because he was having to do all of the work alone. (*Id.* at 39:14-41:1).

### III.   PROCEDURAL HISTORY

The Named Plaintiff filed a Complaint on March 13, 2015 (Dkt. 1). The Complaint alleges Defendants violated the Fair Labor Standards Act, 29 U.S. C. §§201 et seq. ("FLSA") and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.2 et seq. ("NCWHA") by compensating her in a manner that did not adequately meet minimum wage or overtime requirements (*Id.* ¶1). Named Plaintiff also sought to have this case certified as a collective action pursuant to 29 U.S.C. §216(b). (*Id.* ¶ 30). On May 11, 2015, Defendants filed their Answer. On June 22, 2015, both parties filed individual Rule 26(f) Reports (Dkt.13, 16) and Plaintiff Solais and Opt-in Plaintiff Alvarado filed their Motion for Conditional Certification (Dkt. 14). The Court in a June 30, 2015 Order allowed limited discovery on issues pertaining to the Motion for Conditional Certification. On October 16, 2015 the Court issued an Order setting October 30, 2015 as the date by which Defendants must file their Opposition to the Motion to Certify.

### IV. LEGAL ARGUMENT

**1.  CONDITIONAL CERTIFICATION IS NOT WARRANTED**

**a. The Court's Use of a "Lenient Standard" for Conditional Certification Requires at least a "Modest Factual Showing" That Plaintiffs and Potential Plaintiffs Were Victims of a Common Plan or Policy that Violated the Law.**

The Fourth Circuit has not yet resolved "how to determine whether parties are

"similarly situated" for purposes of FLSA collective actions." *Ceras-Campo v. WF P'ship*, No. 5:10¬CV¬215¬BO, 2011 U.S. Dist. LEXIS 12688, at *5 (E.D.N.C. Feb. 9. 2011). While most district courts have adopted the two step approach described in *Ceras-Campo* and referenced by Plaintiff in her Memorandum in Support of Her Motion for Conditional Certification, the *Ceras-Campo* court determined that the plaintiff in that case had failed to meet even the minimal requirement of a "modest factual showing."

In *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, another district court in North Carolina explained that "Plaintiffs bear the burden of demonstrating that certification is appropriate, and while the burden may not be onerous at the notice stage, it is also "not invisible" and that "[m]ere allegations will not suffice; some factual evidence is necessary" (internal citations omitted). No. 3:10-CV-592-FDW-DSC, 2011 U.S. Dist. LEXIS 105302, at *9 (W.D.N.C. Sept. 16, 2011). Accordingly, even though the standard for conditional certification is lenient, the standard should not lead to automatic conditional certification as soon as the plaintiff files an appropriate motion. The court must still make a determination whether the allegations a plaintiff makes in a given case are more than "conclusory attempts to establish the existence of similarly situated" employees. *Ceras-Campo*, at *10.

A Maryland district court in *Butler v. Directsat USA, LLC*, a collective action case, explained that "[t]o meet this burden and demonstrate that potential class members are 'similarly situated,' Plaintiffs must set forth more than 'vague allegations' with 'meager factual support' regarding a common policy to violate the FLSA." 876 F. Supp. 2d 560, 568 (D. Md. 2012) (internal citations omitted).

7

Accordingly, while Named Plaintiff makes allegations throughout her Declaration and deposition, she fails to provide more than "meager factual support" to establish that she is similarly situated to other employees. For example, although she vaguely alleges observations and conversations with co-workers in her Declaration and her deposition, she also admitted that she only spoke with Opt-in plaintiff and two other employees, who did not work for Vesuvios II in the applicable time period regarding the record-keeping policy and pay for kitchen employees. (Dkt. 36 at 76: 18-20).

Under the FLSA, a plaintiff bringing a claim for overtime compensation under the FLSA must do so "within two years after the cause of action has accrued, unless a plaintiff can show that a defendant's violation of the [FLSA] was willful, in which case a three-year statute of limitation applies." *Solis v. SCA Restaurant Corp*, 938 F. Supp. 2d 380, 393 (E.D.N.Y. 2013) (citing 29 U.S.C. § 255(a)). "[A] cause of action under the Fair Labor Standards Act for unpaid minimum wages or unpaid overtime compensation and for liquidated damages 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends.")." *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261 (E.D.N.Y 2014).

The Complaint in this case was filed on March 13, 2015. Opt-in Plaintiff filed his Consent to join the action on July 8, 2015. (Dkt. 12-1.) Thus, any claims arising before March 13, 2013 for Named Plaintiff, or July 7, 2013 for Opt-in Plaintiff would potentially be barred. Even if Plaintiffs were successful in arguing that a three-year statute of limitation applied, Named Plaintiff's conclusory observations pertaining to

8

Defendants' alleged practices in 2011 and prior to March 13, 2012 should not be considered. Further, Opt-in Plaintiff's claims for pay periods prior to July 7, 2012 would be barred. Both Named Plaintiff and Opt-In Plaintiff admit they did not work together at Vesuivio's II after June 2012. (Dkt. 36 at 84: 2-4); (Dkt 39-1 at 35:14-36:17.) As a result, Plaintiffs cannot competently testify about what they observed about the other's work practices within the pertinent period for this case.

In a recent case, *Mata v. Foodbridge LLC,* the district court denied conditional certification to a plaintiff who only included conclusory allegations in a personal declaration with his motion to conditionally certify. No. 14 CIV. 8754 ER, 2015 U.S. Dist. LEXIS 70550 (S.D.N.Y. June 1, 2015). In that case, plaintiff alleged that he, like the Plaintiff in the instant case, worked over 80 hours per week ("[H]e was scheduled to work from 8 a.m. to 8 p.m. seven days per week, except for the fourth week of each month when he worked from 8 a.m. to 8 p.m. six days per week." *Id*. at *3). Similar to the testimony in this case, Plaintiff also claimed "based on 'observations and conversations with other employees,' that others also were not paid their overtime." *Id*. at *4. While the court explained that plaintiff "need only 'make a modest factual showing that [he] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the [FLSA],'" it went on to clarify that "Plaintiff's burden of proof is low, but 'it is not non-existent.'" *Id*. at *6 (internal citations omitted, emphasis added).

Importantly, even in a case where the defendants did not object to plaintiff's submitting additional evidence after the court noted the dearth of evidence, "the better practice is to submit the requisite evidence with the motion to certify." *Yerger v. Liberty*

*Mut. Grp., Inc*., No. 5:11¬CV¬238¬D, 2011 U.S. Dist. LEXIS 131997, at *15 (E.D.N.C., Nov. 15, 2011) (emphasis added). While substantive allegations of how plaintiffs are similarly situated in a complaint or declaration are often enough, in cases where allegations are conclusory and fail to meet even a "modest factual showing," courts have not hesitated to deny motions for conditional certification. Accordingly, Defendants urge the Court to consider the evidence produced and find that even under a lenient standard, Plaintiffs, as further explained below, fail to show the existence of a common illegal plan or policy that affected similarly situated employees.

### b. Named Plaintiff and Putative Plaintiffs Are Not Similarly Situated.

The Eleventh Circuit has extensively examined the "similarly situated" standard in collective actions. The Northern District of Georgia ruled that "Plaintiffs bear the burden of establishing that they are "similarly situated" to the employees they seek to represent in *Beecher v. Steak N Shake Operations, Inc.,* 904 F. Supp. 2d 1289, 1297 (N. D. Ga. 2012). Unsupported, generalized allegations of similarity are not sufficient. *Id.* at 1297-98. The plaintiffs may meet this burden, which is not heavy, 'by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary.' *Id.* (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996))." *Lovett v. SJAC Fulton Ind I, LLC*, No. 1:14-cv-983-WSD, 2015 U.S. Dist. LEXIS 80947, at *28-29 (N. D. Ga. June. 23, 2015).

In *Yerger v. Liberty Mut. Grp., Inc.,* a plaintiff sought to represent a class of

10

salaried field auditors for Liberty Mutual, but plaintiff claimed they were required to regularly work over 40 hours per week without additional pay. Based on the extensive evidence presented by Defendant Liberty Mutual, the court denied conditional certification finding that although plaintiff and the prospective class were all field auditors, named plaintiff's duties varied drastically in complexity from those of other field auditors as a result of her servicing a particular county in North Carolina and that she was similarly situated only to herself. Plaintiff then sought to amend her complaint, which the court denied since plaintiff failed to admit any new evidence to support how she was similarly situated to other plaintiffs, holding that "[a] plaintiff has the burden of showing a 'reasonable basis' for [her] claim that there are other similarly situated employees." *Id*. at *13. The court went on to explain that this burden applies to both stages of certification, not only the second stage after discovery has been completed. *Id.*

Similarly, Named Plaintiff in this case may have had similar duties in her day-to-day work, but ultimately, during the applicable period, she reported her time in a different manner from that of other employees According to testimony by Defendant Scotti D'Abbusco, Defendants required all employees except Named Plaintiff to record their hours in a computerized time clock. Named Plaintiff, on the other hand, refused to use the time clock, claiming not to understand how the computer system worked and requested to record her hours on paper, which she then turned in to Defendants to be paid. (Dkt. 22-1*).*

Even if the Court does not consider the testimony of Defendants that they required all employees to record their time using a computerized time clock, Plaintiff, in seeking

11

to prove too much, fails to meet her burden. Named Plaintiff claimed that "kitchen employees were not allowed to record their hours worked." *See* Martinez-Solais Decl. ¶6; *see also* San Agustin-Alvarado Decl. ¶6. Yet, Named Plaintiff and Opt-in Plaintiff received paychecks with hours itemized. (Dkt. 39-1 at 56:17-29, Dkt. 36 at 19:17-25) Opt-in Plaintiff acknowledges having to use a time clock when he returned to Vesuvio's II after leaving employment another restaurant that paid higher wages. He also received paychecks with itemized hours and pay. (*Id.*)

Named Plaintiff and Opt-in Plaintiff directly contradict not only each other's testimony but that of Defendant Scott D'Abbusco. "In assessing conditional certification, courts examine a variety of factors, 'including the factual and employment settings of the individual[] plaintiffs, *the different defenses to which the plaintiffs may be subject on an individual basis,* [and] the degree of fairness and procedural impact of certifying the action as a collective action.'" *Yerger v. Liberty Mut. Grp., Inc.,* No. 5:11CV238D, 2011 U.S. Dist. LEXIS 131997, at *11-12 (E.D.N.C., Nov. 15, 2011) (emphasis added.) In this case, although the Named Plaintiff's account of pay practices at Vesuvio's differs from Opt-in Plaintiff's, she testified that she received information about such pay practices from employees who left employment prior to 2013.

The failure in proof pertains not only to Named Plaintiff's description of pay practices related to her own work, but also to her statements related to recordkeeping policies for others. In her Declaration, Named Plaintiff swore that Defendants did not maintain any recordkeeping policy for kitchen staff. (Dkt. 15-1 ¶6). In her deposition,

12

she also testified that all the kitchen workers were prevented from punching a timeclock and were paid cash only. (Id. at 93:1-18). She acknowledged, however, receiving checks showing that she worked part-time only. (Dkt. 36 at 19:17-25). In her deposition, when asked about her knowledge of pay practices pertaining to others, she acknowledged that she had only spoken to Melecio Santiago, who stopped working at the restaurant in 2012 and that she never saw any of his documents; "Alex" who left the restaurant in 2011 and the Opt-in Plaintiff, who did not work with her after approximately June 2012. Solais talked with no one else about "the recordkeeping policy for kitchen workers at Vesuvios" II. (*Id.* at 76:18-20).

She continually testified that she worked full shifts six or seven days a week for seven years and that the other kitchen workers worked alongside her doing the same work for the same hours and days. (*Id*. at 88:17-93) Yet, the Named Plaintiff acknowledged that "Maria" was paid by the hour, used a time clock and did not work full time. (*Id*. at 81:4-22). She did not know whether Margarita used a time clock. (*Id.* at 83:9)  As to "Isabella," Solais testified that she did not see her paycheck, but acknowledges that she received one (as opposed to receiving cash payments.) (Id. at 88:15-16).

The Opt-in Plaintiff testified in his Declaration that he "worked for Vesuvio's II from May 2010 to April 2013 and that he voluntarily resigned from employment at Vesuvio's II in April 2015. Yet in his deposition, Opt-in Plaintiff acknowledges that he stopped working for Vesuvio's to work an agricultural job in June 2012, where he worked approximately six months. (Dkt. 39-1 at 22:15-17). Then he worked in another

13

restaurant for almost a year, starting January or February of 2013. (Dkt. 39-1 at 41:2-22). He testified that he returned to work full time at Vesuvio's in 2015. (Dkt. 39-1:1-5.) Opt-in Plaintiff acknowledged having to use a time clock and receiving checks with itemized hours of work and pay starting January 2015. (*Id*. at 49:14-24).

Defendant Scotti D'Abbusco testified that Opt-in Plaintiff in fact did not want to be paid by check or to have deductions from his checks for taxes or other purposes. Indeed, Opt-in Plaintiff complained about the size of his checks.In his deposition, he acknowledged that he could not identify whether he was adequately paid minimum wage or overtime pay because he could not read his check stubs. (Dkt. 39-1 at 66:17-19).

Despite Opt-in Plaintiff's statements in his Declaration that he had spoken with other dishwashers and cooks about the working conditions and pay at Vesuvio's II, he acknowledged in his Deposition that he had only spoken to the Named Plaintiff about these matters in February 2015, a month before the Complaint was filed. (*Id*. at 89:16-90:3). Contrary to the Named Plaintiff's testimony that all of these employees worked the same schedule as her and the same days---as long as the restaurant was open for the most part--the Opt-In Plaintiff's complaint was that during the same periods, he worked only with two others and when he left in 2012, he did so because he was doing the work alone. (*Id*. at 39:14-41:1).

Although this court and others have stated that matters of credibility are not sufficient grounds to deny a motion for conditional certification, *Long v. CPI Sec. Sys.*,

14

292 F.R.D. 296, 302 n. 14 (W.D.N.C. 2013), in this case, given the lack of substantial and reliable evidence that the Named Plaintiff and other employees were subject to the same practices or were otherwise similarly situated during the period pertinent to this lawsuit, the Court should decline to certify the case as a collective action. Especially, whereas here, it appears that the case is likely to be de-certified later, Defendants urge the Court not to certify the case as a collective action. In this case certification where de-certification is likely would not only undermine judicial efficacy, it would also waste valuable resources and the time of both Plaintiffs and Defendants.

## 2. ALTERNATIVELY, PLAINTIFF'S PROPOSED NOTICE AND CONSENT FORM SHOULD BE LIMITED

### a. Plaintiffs' proposed notice to putative plaintiffs should be rejected.

In the event this Court finds that Plaintiffs have met their burden of proof substantiating their allegations under the FLSA, this Court should not adopt Plaintiffs' proposed notice since it fails to allow potential plaintiffs the opportunity to obtain or consult with an attorney of their own choice (*See* Dkt. 15, Ex. D). It also fails to include contact information for Defendants' counsel or claims, does not adequately explain that potential plaintiffs may be subject to depositions or other discovery, and suggests that there are no costs associated with joining the lawsuit.

Particularly, here, where Defendants have challenged the solicitation process used by the Named Plaintiff or those working on her behalf, Defendants urge the Court to

provide order that a neutral notice be submitted, with supervision by the Court. In some cases, courts request that the parties submit a joint letter to the Court with the desired language for an opt-in notice. The Court in *Long v. CPI Sec. Sys.*, 292 F.R.D. 296, 305 (W.D.N.C. 2013) ordered that "counsel are directed to submit a joint letter to the Court describing the desired language of the opt-in notice to be delivered to the conditional collective action members, highlighting any disagreements on language requiring attention by the Court."; *Adams v. Citicorp Credit Servs., Inc.*, No. 1:12CV286, 2015 U.S. Dist LEXIS 34890 (M.D.N.C. Mar. 20, 2015) (Court directed parties to "attempt to reach an accommodation" regarding notice issues such as Plaintiff's request for putative plaintiffs' phone numbers and email addresses, ordering Defendants to post Plaintiff's proposed notice in the employment place, Defendant's request that the court impose a 60-day customary opt-in deadline, etc.); *Romero v. Mountaire Farms, Inc.,* 796 F. Supp. 2d 700 (E.D.N.C. 2011) ("The court DIRECTS the parties to confer and to jointly submit, within thirty (30) days of the date of this Order, a revised proposed class notice (including appropriate forms) in conformance with the Court's ruling set forth herein. The parties shall submit English and Spanish versions of the class notice and appropriate forms, with the Spanish translation prepared by an individual certified as a Spanish-English Federal Court Interpreter by the Administrative Office of the United States Courts. Thereafter, the Court will undertake approval of the proposed notice."))

The District Court of Maryland in *Butler v. Directsat USA, LLC* ordered changes to a proposed notice, finding that "Plaintiffs' notice is deficient because it fails to assert

Defendants' position in the lawsuit and to advise potential plaintiffs adequately about the right to join this suit with their own attorney and the possibility of having to participate in the discovery process and the trial." 876 F. Supp. 2d 560, 575 (D. Md. 2012).

Similarly, Plaintiffs' proposed notice and consent form here fail to mention that Defendants deny the allegations made by Plaintiffs. Additionally, the notice simply states "You may have to answer questions about your claim and provide documents if you have any," (Dkt. 15, Ex. C) rather than informing potential plaintiffs that they may need to appear for depositions and be involved in discovery as the case proceeds. Most egregiously, Plaintiffs fail to inform potential plaintiffs that they may seek the advice of other counsel and could even join the lawsuit with different counsel. Paragraph 4 of the consent form provided as Exhibit D states "I choose to be represented by The Law Offices of Gilda A. Hernandez, PLLC and Outten & Golden, LLP and other attorneys with whom they may associate." This language precludes potential plaintiffs from learning that they have the choice of being represented by other counsel.

Plaintiffs' proposed notice directs potential plaintiffs only to Plaintiffs' counsel, disregarding the fact that Defendants' counsel's information should be listed in the event a potential plaintiff has questions or concerns about the Defendants' position.

Additionally, Plaintiffs' proposed notice lacks full disclosure since it does not adequately explain the possibility that Plaintiffs may be liable to Defendants for legal costs under Federal Rule of Civil Procedure 54(d)(1) in the event they lose the case. *See*

*White v. Baptist Mem. Health Care Corp.*, No. 08-2478, 2012 U.S. Dist. LEXIS 122564, at *9-10 (W.D. Tenn. Aug. 29, 2012) ("The Clerk of Court relied on Rule 54 in concluding that the FLSA 'must be read in *pari materia* with Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920; and whereas [the] FLSA might not specifically provide for the recovery of a defendant's costs, Rule 54(d) and § 1920 do."); *Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, No. 10-948, 2014 U.S. Dist. LEXIS 150503, at *7 (W.D. Penn. Oct. 23, 2014) ("Rule 54(d)(1) creates a strong presumption that costs are to be awarded to the prevailing party."). Consequently, Defendants urge this Court to reject Plaintiffs' proposed notice and consent form and allow the Parties to collaboratively propose more just notice and consent forms to this Court for approval.

As an example of more impartial notice, the court in *Gjurovich v. Emmanuel's Marketplace, Inc.* ordered notice which included a warning that "You may also be held liable for costs associated with this lawsuit, and for potential counterclaims which could be asserted against you by [Defendant]." 282 F. Supp. 2d 101, 107 (S.D.N.Y. 2003). It also included an exemplary explanation of how Plaintiffs' counsel was being paid and that potential plaintiffs could retain their own counsel if they so chose:

> The attorney for the class plaintiffs is being paid on a contingency fee basis, which means that if there is no recovery there will be no attorney's fee. If there is a recovery, the attorney for the class will receive a part of any settlement obtained or money judgment entered in favor of all members of the class. If you sign and return the Consent to Become Party Plaintiff form attached to this Notice, you are agreeing to designate the class representatives as your agents to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning

attorney's fees and costs, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the representative Plaintiff will be binding on you if you join this lawsuit. However, the Court has retained jurisdiction to determine the reasonableness of any contingency agreement entered into by the Plaintiff with counsel, and to determine the adequacy of the plaintiffs' counsel.

Furthermore, you can join this lawsuit by counsel of your own choosing. If you do so, your attorney must file an "optin" consent form by [insert date that is 60 days from date of notice mailing].

*Id.* This Court should require that the notice provided to potential plaintiffs is impartial and provides adequate notice of the lawsuit. Additionally, the opt-in period should be limited to 30-60 days since that is the amount of time most courts grant for notice to potential plaintiffs.

Finally, Defendants request that a neutral third party administer the notice and that Plaintiffs and their counsel be restricted from soliciting or directly contacting potential plaintiffs without notifying Defendants' counsel and leave of the Court.

**b. Any court-ordered production list of putative class members should be limited to name, job title, and last known address.**

Plaintiffs request that this Court require Defendants to produce the "name, job title, last address, telephone number, dates of employment, location of employment, and date of birth" of all kitchen employees since March 13, 2013. (Dkt. 15). Defendants agree that should conditional certification occur, a list of names, job titles, and last known addresses should be produced to facilitate notice. However, personal information such as

19

telephone numbers and dates of birth are private information and should be protected from discovery. Additionally, Plaintiffs admit in their Memorandum that "plaintiffs must 'establish [] a need" for this type of information before it may be turned over []...the return of the notice may establish such a need.'" (Dkt. 15). Plaintiffs allege, without showing any evidence such as the return of a notice, that most of the potential plaintiffs have most likely moved and additional information will be needed to locate them, instead of waiting to "establish a special need" for this personal information as required by other courts in this Circuit. *See Butler v. Directsat USA, LLC*, 876 F. Supp. 2d 560, 575, n.17 (D. Md. 2012). Consequently, this Court should limit the information needed to provide notice to potential plaintiffs to names, job titles, and last known addresses.

## V.  CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court deny Plaintiffs' Motion to Conditionally Certify this case as a collective action, or in the alternative, order the creation and use of a modified notice to putative plaintiffs and for supervision of the notice process.

This the 30th day of October, 2015.

**LAW OFFICES OF DENISE SMITH CLINE**

<u>/s/ Denise Smith Cline</u>
Denise Smith Cline
State Bar No. 10837
16 North Boylan Avenue
Raleigh, NC 27603
denise@dsclinelaw.com
Office: (919) 926-0734
Facsimile:  (980) 225-5189

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this day that the foregoing document was filed with the Court via the CM/ECF system which will send notification of such filing as follows:

Gilda A. Hernandez
The Law Offices of Gilda A. Hernandez, PLLC
315 S. Salem Street
Suite 310
Apex, NC  27502

Adam T. Klein
Sally J. Abrahamson
OUTTEN & GOLDEN, PLLC
3 Park Ave., 29th Fl.,
New York, NY 10016

This the 30th day of October, 2015

*/s/ Denise Smith Cline*
Denise Smith Cline