## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MIRIAM MARTINEZ SOLAIS,              )
on behalf of herself and all         )
others similarly situated,           )
                                     )
              Plaintiff,             )
                                     )
        v.                           )          1:15cv227
                                     )
VESUVIO'S II PIZZA & GRILL, INC.     )
and GIOVANNI SCOTTI D'ABBUSCO,       )
                                     )
              Defendants.            )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on "Plaintiff's Motion for
Conditional Certification Pursuant to the Fair Labor Standards Act"
(Docket Entry 14) (the "Certification Motion"); "Plaintiff's
Emergency Motion for a Protective Order" (Docket Entry 17) (the
"Plaintiff's Protective Order Motion"); "Defendants' Motion for
Protective Order" (Docket Entry 23) (the "Defendants' Protective
Order Motion"); "Plaintiffs' Motion to Strike Affidavits of Russell
Thomas, James Wilson, Jason Howe, and Christopher Cates" (Docket
Entry 42) (the "Motion to Strike"); and "Plaintiff's Memorandum
Regarding the Reasonableness of Defendants' Claimed Expenses"
(Docket Entry 54) (the "Objection").  For the reasons that follow,
the Court will grant the Certification Motion as detailed herein;
will deny Plaintiff's Protective Order Motion, Defendants'
Protective Order Motion (collectively, the "Protective Order

Motions"), and the Motion to Strike; and will sustain the Objection.

**BACKGROUND**

On behalf of certain kitchen workers at Vesuvio's II Pizza & Grill, Inc. ("Vesuvio's II"), Plaintiff Miriam Martinez Solais (the "named Plaintiff") initiated a putative collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., (the "FLSA") and a putative class action under the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1 et seq., against Giovanni Scotti D'Abbusco (the "Individual Defendant") and Vesuvio's II (collectively with Individual Defendant, the "Defendants"). (Docket Entry 1.) According to the Complaint, Defendants failed to pay named Plaintiff and other kitchen workers minimum wages and overtime, as mandated by law. (See, e.g., id., ¶¶ 2-4, 14, 17-18, 30, 34.) A few months later, named Plaintiff filed a Consent to Join Suit as Party Plaintiff on behalf of Mateo San Agustin Alvarado (the "opt-in Plaintiff," and collectively with named Plaintiff, the "Plaintiffs"). (Docket Entries 12, 12-1.)

Thereafter, named Plaintiff filed the Certification Motion, in connection with which Defendants sought discovery (see Docket Entry 13 at 2-3).[1] In particular, Defendants requested "initial

---

1 Citations herein to Docket Entry pages utilize the document's internal pagination if unified internal pagination exists. In the absence of such pagination, the Docket Entry page citations utilize the CM/ECF footer's pagination.

2

discovery on the manner and means of recruitment by [named] Plaintiff or her counsel." (Id. at 3.) After hearing argument of counsel regarding the requested discovery (see Docket Entry 21), the Court authorized "limited discovery pertaining to the named Plaintiff and the opt-in Plaintiff on the subject of factual issues raised by [named Plaintiff's] Motion for Conditional Certification (but not any equitable defenses related to alleged recruitment of potential plaintiffs as proposed by Defendant[s] in [Defendants'] Rule 26f Report)" (Text Order dated June 30, 2015).

This discovery generated multiple motions to compel and motions for protective orders that the Court resolved in a Memorandum Opinion and Order on October 16, 2015 (Docket Entry 51) (the "Order"). As relevant to the instant dispute, the Order denied the parties' requests for expense-shifting regarding their motions, but specified (1) that Plaintiffs' counsel would bear any late cancellation and expedited scheduling expenses for opt-in Plaintiff's remote deposition and (2) that Defendants and opt-in Plaintiff would equally divide the videoconferencing expenses for that deposition. (Id. at 40-42.) The Order instructed the parties to confer regarding Defendants' claimed expenses and to notify the Court of any objections. (Id. at 43-44.)[2] The Order further directed the parties to "negotiate in good faith in a meaningful

---

    2  The Objection contests certain of these expenses. (See generally Docket Entries 54, 54-12.)

3

attempt to resolve any other discovery disputes that may arise and to develop a consent protective order as to any materials entitled to protection under Rule 26(c)(1)" of the Federal Rules of Civil Procedure (the "Rules"). (Id. at 45.) To date, the parties have not submitted any consent protective orders to the Court.[3]

Similarly, the parties have not indicated that they have resolved their competing Motions for Protective Order, which primarily seek to prohibit each other's communication with putative plaintiffs. (See Docket Entry 17 at 2; Docket Entry 23 at 3-4.) To the contrary, Defendants rely on Defendants' Protective Order Motion in requesting certain class notification procedures. (Docket Entry 53 at 2.) Accordingly, the Court will first resolve the Protective Order Motions and related Motion to Strike before addressing the Certification Motion and Objection.

## DISCUSSION

### I.  Motion to Strike

As an initial matter, Plaintiffs ask the Court to strike, pursuant to Rule 12(f), the affidavits of Christopher Cates, Jason Howe, Russell Thomas ("Thomas"), and James Wilson "filed in support of Defendants' Reply in Support of their Motion for Protective Order" (the "Affidavits"). (Docket Entry 42 at 1; see Docket

---

3  At the parties' request (see Docket Entry 59), the Court (per United States District Judge Loretta C. Biggs) stayed this action until February 1, 2016, to permit mediation of this dispute. (Docket Entry 60.) In February, the parties reported that mediation failed. (See Docket Entry 61.)

4

Entries 38-2 through 38-5.)  Rule 12(f) authorizes courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f) (emphasis added).  Although occasionally used in common parlance to refer generically to any court filing, "pleading" is a term of art under the Rules.  JHRG LLC v. StormWatch, Inc., No. 1:09cv919, 2011 WL 3111971, at *5 (M.D.N.C. July 26, 2011). Specifically, Rule 7(a) identifies which documents qualify as pleadings in federal cases.  Id.; see also General Tire & Rubber Co. v. Watkins, 331 F.2d 192, 195-96 (4th Cir. 1964) (analyzing whether filing constituted "a pleading within the meaning of [the] Rule[s]" by reference to Rule 7(a), which "defines pleadings"). Under that Rule, the complaint; any third-party complaint; answers to (1) such complaints, (2) any crossclaims, and (3) any counterclaims; and, "if the court orders one, a reply to an answer," constitute the pleadings.  Fed. R. Civ. P. 7(a).  This definition does not include affidavits in support of motions for protective orders and their supporting memoranda.  See id. Therefore, the Court will not strike the Affidavits; nevertheless, in analyzing Defendants' Protective Order Motion, the Court will consider — to the extent applicable — Plaintiffs' contentions that the Affidavits contain prejudicial and irrelevant information (see Docket Entry 43 at 9-11).  See JHRG, 2011 WL 3111971, at *5.

## II.  Protective Order Motions

The parties each seek to limit the other side's communication with putative class members.  (See Docket Entry 17 at 2; Docket Entry 23 at 3.)  As a general matter, both the plaintiff and the defendant in an FLSA action may communicate with unrepresented prospective class members.  See Longcrier v. HL-A Co., Inc., 595 F. Supp. 2d 1218, 1225-26 (S.D. Ala. 2008).  The Court possesses relatively broad discretion, however, to limit such communications.  Id. at 1226.  Accordingly, courts restrict communications that are "misleading, coercive, or otherwise abusive," including communications that seek to "undermine cooperation with or confidence in class counsel" or to "undermine or contradict" a court-approved class notice.  Stransky v. HealthONE of Denver, Inc., 929 F. Supp. 2d 1100, 1105 (D. Colo. 2013) (internal quotation marks omitted).  To justify a communication constraint, a party "must show (1) that a particular form of communication has occurred or is threatened to occur and (2) that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation." Longcrier, 595 F. Supp. 2d at 1226-27 (internal quotation marks omitted); see also Gulf Oil Co. v. Bernard, 452 U.S. 99, 101 (1981) (explaining that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential

6

interference with the rights of the parties"). Once the movant makes a qualifying "specific record showing . . . of the particular abuses by which it is threatened," a court may limit communications, "giving explicit consideration to the narrowest possible relief which would protect the respective parties." Gulf Oil, 452 U.S. at 102 (internal quotation marks omitted).

### A. Defendants' Protective Order Motion

Defendants contend that named Plaintiff has improperly solicited individuals to join this collective action and that this solicitation necessitates certain communication constraints. (Docket Entries 23, 41.) In support of this assertion, Defendants offer Individual Defendant's July 2015 affidavit (Docket Entry 22-1) (the "Defendant's Affidavit") and the June 2015 Affidavit of Manuel Gil ("Gil") (Docket Entry 22-2) (the "Gil Affidavit"). (See Docket Entry 23 at 1-3.) Defendant's Affidavit states that a "former employee told [Individual Defendant] that th[e] former employee and others had been solicited to join the lawsuit by [named Plaintiff] and her lawyer." (Docket Entry 22-1 at 6.) Defendant's Affidavit recounts additional items that "the former employee said" and that "[t]he former employee told [Individual Defendant]" regarding alleged efforts to solicit the former employee's participation in the lawsuit. (Id. at 6-7.) Defendant's Affidavit indicates that the former employee made these

7

statements sometime in or after December 2014, but provides no
further details regarding the former employee. (Id. at 5-7.)

The Gil Affidavit similarly recounts statements that a "former
employee of Defendant Vesuvio['s] II" made regarding three
telephone conversations that the former employee allegedly had with
two unidentified women and named Plaintiff. (Docket Entry 22-2 at
1-2.) The affidavit refers to this former employee as "J. Doe" but
provides no further details regarding this individual or the timing
of any of the recounted events. (Id.) Finally, the Gil Affidavit
describes a telephone call that Gil overheard between named
Plaintiff and this former employee. According to the Gil
Affidavit:

> During the call, [named] Plaintiff told J. Doe that
> [named] Plaintiff herself was now very close to receiving
> her own work permit, which would permit her to work in
> the United States lawfully. She suggested to J. Doe that
> if J. Doe had worked with her that J. Doe could, too, be
> in the same situation. She told J. Doe that if J. Doe
> met with her and a third party in a public place, they
> could accomplish it quietly and that J. Doe would not
> have to inform his/her family of the arrangement.
> [Gil's] impression was that [named] Plaintiff was
> offering to assist J. Doe in securing a work permit or
> other benefit, just as she was in the process of
> receiving, if J. Doe met with her and a third party.

(Id. at 2.)

The former employee's statements regarding what named
Plaintiff and other individuals allegedly told the former employee
"are hearsay because they are used to prove the truth of the out of
court and unsworn assertions of a non-witness," namely this

8

unidentified former employee.  North Am. Clearing, Inc. v.
Brokerage Computer Sys., Inc., 666 F. Supp. 2d 1299, 1311 (M.D.
Fla. 2009); see also Fed. R. Evid. 801(c).  As such, they cannot
support the requested communication constraint.  See Gulf Oil, 452
U.S. at 103 n.18 (explaining that "unsworn allegations of
misconduct" cannot justify communication ban); Flint Hills Sci.,
LLC v. Davidchack, Civ. Action No. 00-2334-KHV, 2001 WL 1718291, at
*2 (D. Kan. Dec. 3, 2001) (observing that "a protective order
should not issue on th[e sole] basis" of "the hearsay allegations
of [an] affidavit" (internal quotation marks omitted)); see also
North Am. Clearing, 666 F. Supp. 2d at 1311-12 (concluding that
hearsay in affidavit cannot justify grant of summary judgment).[4]

As to named Plaintiff's comments during the telephone call
overheard by Gil, to the extent such matters constitute a non-
hearsay "admission of an opposing party" (Docket Entry 38 at 3-4),
they cannot salvage Defendants' Protective Order Motion.  The
various comments "as reported by [affiant] Gil" (id. at 5) do not
establish the necessary clear, "specific record showing" of
particular abuses to justify the requested restraint.  Gulf Oil,
452 U.S. at 101-02.  In particular, the comments do not clearly
establish that named Plaintiff has solicited — or will solicit in

_____

4    Hearsay in an affidavit constitutes the functional
equivalent of an unsworn allegation.  See, e.g., North Am.
Clearing, 666 F. Supp. 2d at 1312 ("[The hearsay declarant's]
statements to [affiant] are hearsay without exception and thus are
inadmissible as substantive evidence.").

the future — participation in this action.  Indeed, even Gil understood that, to receive the offered assistance, the former employee only had to "me[e]t with [named Plaintiff] and a third party" rather than join any lawsuit.  (Docket Entry 22-2 at 2.) Thus, because Defendants have not established a clear record of attempted solicitation, the Court will deny Defendants' Protective Order Motion.

## B.  Plaintiff's Protective Order Motion

Plaintiffs meanwhile contend that Defendants have improperly threatened putative plaintiffs in an attempt to dissuade their pursuit of this FLSA action.  (See Docket Entries 17, 18, 26.)  In support, Plaintiffs offer the declarations of (1) Maria Xochilt Murrieta Martinez ("Martinez") (Docket Entry 18-1) (the "Martinez Declaration"),[5] (2) Silvia B. Nelson ("Nelson") (Docket Entry 18-2) (the "Nelson Declaration"), and (3) opt-in Plaintiff (Docket Entry 18-7) (the "Alvarado Declaration").  As relevant to Plaintiff's Protective Order Motion, the declarations include the following statements:

First, the Martinez Declaration states that, on December 22, 2014, Individual Defendant told Martinez to tell Plaintiff to "stop pursuing any potential lawsuit against Defendant[s]" or else "she ran the risk of arrest and deportation."  (Docket Entry 18-1 at 1-

---

5  Martinez's declaration identifies her as named Plaintiff's former sister-in-law.  (Docket Entry 18-1 at 1.)

2.)  Martinez further asserts that Individual "Defendant also told [Martinez] to advise [named Plaintiff] that the police were already looking for her as he had hired a private investigator and confirmed her immigration status, . . ., and she would probably be deported."  (Id. at 2.)  According to the Nelson Declaration, Nelson received a call on December 29, 2014, from named Plaintiff, who recounted the conversation between Individual Defendant and Martinez.  (Docket Entry 18-2 at 2.)  Thereafter, Nelson states, Nelson participated in a telephone call with Individual Defendant's wife, who "denied the allegations of such threats, but said it could have been the private investigator they hired who may have made those comments."  (Id.)

The Nelson Declaration further states that named Plaintiff told Nelson on January 28, 2015, that a Roxboro police officer had called named Plaintiff and "told [her] that he knew about the unpaid wages dispute between [named Plaintiff] and Defendants and asked her to come in 'to explain her side of the story.'"  (Id. at 2-3.)  Nelson states that she subsequently participated in a call with Detective Cates of the Roxboro Police Department, during which Detective Cates indicated that he was investigating a complaint that Individual Defendant filed against named Plaintiff.  (Id. at 3.)  Nelson asserts that Detective Cates (1) said he "was aware of the pending civil case against Vesuvio's II," (2) admitted working security for Defendants, but denied being friends with Individual

Defendant, and (3) "angrily stated that he was issuing two (2) warrants for [named Plaintiff's] arrest immediately." (Id.) Shortly thereafter, according to the Nelson Declaration, named Plaintiff "called the office to advise us that she had been arrested." (Id.)

Finally, the Alvarado Declaration states that (1) during a government investigation of Defendants' pay practices, Individual Defendant instructed opt-in Plaintiff to respond in a certain way to any queries regarding whether he was properly paid; (2) Individual Defendant and Defendants' manager, Alfredo, began treating opt-in Plaintiff differently at work following named Plaintiff's arrest; (3) Alfredo told opt-in Plaintiff to consider quitting or else he "ran the risk that what happened to [named Plaintiff] could happen to [opt-in Plaintiff] as well[;]" and (4) shortly after this conversation with Alfredo, a car followed opt-in Plaintiff for several blocks on his way home from work. (Docket Entry 18-7 at 2-3.) Additionally, in their memorandum in support of Plaintiff's Protective Order Motion, Plaintiffs assert that "some putative plaintiffs who have contacted Plaintiff's counsel have indicated that they were hesitant to join the action, cooperate with an ongoing U.S. DOL investigation, or to even discuss Defendants' practices precisely because they were afraid of what Defendants would do to anyone who participated." (Docket Entry 18 at 5.)

12

In response, Defendants filed various affidavits contesting Plaintiffs' description of events. First, in Defendant's Affidavit, Individual Defendant denies (1) threatening named Plaintiff in his conversation with Martinez, (2) reporting named Plaintiff to the Roxboro Police Department, (3) instructing opt-in Plaintiff to respond in a specific manner to queries about his pay, and (4) intimidating or coercing opt-in Plaintiff. (Docket Entry 22-1 at 6, 8-9.) Second, in his affidavit (the "Alfredo Affidavit"), Defendants' manager denies opt-in Plaintiff's assertions that he treated opt-in Plaintiff poorly and warned opt-in Plaintiff to quit his job. (Docket Entry 22-3 at 2-3.) Alfredo further disclaims knowledge of the car that followed opt-in Plaintiff. (Id. at 3.) Third, in his affidavit (the "Thomas Affidavit"), private investigator Thomas states that Defendants hired him to investigate whether named Plaintiff had previously pursued unpaid wage claims against other employers; that Thomas reported named Plaintiff to the Roxboro police on approximately January 12, 2015; and that Defendants did not ask or encourage Thomas to report named Plaintiff to the police. (Docket Entry 38-2 at 2-4.) Fourth and finally, Detective Cates states in his affidavit (the "Cates Affidavit") that he learned of named Plaintiff's civil suit against Defendants while interviewing Individual Defendant on January 26, 2015, as part of the police investigation of named Plaintiff. (Docket Entry 38-5 at 3-4.)

13

Against this backdrop, Plaintiffs have not established the "clear record" of specific abuse that _Gulf Oil_ requires for communication limitations. _See_ 452 U.S. at 101-02. To begin with, Defendant's Affidavit and the Alfredo Affidavit collectively deny the existence of, or at least Individual Defendant's and Alfredo's involvement in, the threatening conduct described in the Martinez Affidavit and the Alvarado Affidavit. This disputed conduct constitutes an insufficient evidentiary basis for the requested relief. Moreover, because unsworn assertions cannot justify communication limitations, _see id._ at 103 n.18, the assertion about putative plaintiffs' fears in Plaintiffs' memorandum (_see_ Docket Entry 18 at 5) likewise provides an insufficient basis for the requested relief. As a result, Plaintiff's Protective Order Motion hinges on the Nelson Affidavit. Nelson's statements about Individual Defendant's wife's comments, named Plaintiff's comments, and Detective Cates' comments during the various telephone calls constitute inadmissible hearsay. _North Am. Clearing_, 666 F. Supp. 2d at 1311; Fed. R. Evid. 801(c). Additionally, even setting aside the hearsay impediment, Plaintiffs have not established a basis to attribute to Defendants Detective Cates' decision to issue arrest warrants for named Plaintiff. Accordingly, the Court denies Plaintiff's Protective Order Motion.

14

## C.  Future Communications

The Protective Order Motions allege various improprieties by Plaintiffs and Defendants from December 2014 (see, e.g., Docket Entry 18-1 at 1) through, at the latest, June 2015 (see Docket Entry 22-2 at 3).  For the reasons stated above, the parties have not shown that this alleged conduct — which occurred between nine and fifteen months ago — satisfies the Gulf Oil standard for limiting communications.  Nevertheless, given the course of this litigation, the Court directs all parties and their agents to scrupulously refrain from any communication that is "misleading, coercive, or otherwise abusive," including communication that may "undermine or contradict" the forthcoming court-approved class notice.  Stransky, 929 F. Supp. 2d at 1105 (internal quotation marks omitted).  The parties must exhibit particular caution in any oral communications, as "unsupervised oral solicitations, by their very nature, are wont to produce distorted statements on the one hand and the coercion of susceptible individuals on the other." Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1206 (11th Cir. 1985).

## III.  Certification Motion

Having resolved the Protective Order Motions, the Court turns to Plaintiff's Certification Motion, which seeks FLSA conditional certification of a class of Vesuvio's II employees.

15

## A. FLSA Standards

Under the FLSA, an employee can pursue an action for unpaid overtime and minimum wages on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). For FLSA purposes, "[p]utative class members are similarly situated . . . if they raise a similar legal issue as to coverage, exemption, or nonpayment o[f] minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 469 (E.D.N.C. 2010) (internal quotation marks omitted).[6] To become a party plaintiff, each "similarly situated" employee must "give[] his consent in writing to become such a party and such consent [must be] filed in the court in which such action is brought." 29 U.S.C. § 216(b). Courts employ a two-stage certification procedure for FLSA collective actions. Houston v. URS Corp., 591 F. Supp. 2d 827, 831 (E.D. Va. 2008).

At the first stage, known as conditional certification, "the court determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." Adams v. Citicorp Credit Servs., Inc., 93 F. Supp. 3d 441, 453 (M.D.N.C. 2015) (internal quotation

---

6    FLSA collective actions lack the "requirements of numerosity, commonality, typicality and adequacy" associated with Rule 23 class actions. Robinson v. Empire Equity Grp., Inc., Civ. Action No. 09-1603, 2009 WL 4018560, at *1 n.8 (D. Md. Nov. 18, 2009).

marks omitted).[7]  Although "not a rubber-stamp approach," the conditional certification standard is "fairly lenient[:]"  the plaintiff "need only make a relatively modest factual showing that a common policy, scheme or plan that violated the law exists." Id. (internal quotation marks and alterations omitted); see also Hart v. Crab Addison, Inc., No. 13-CV-6458, 2015 WL 365785, at *2 (W.D.N.Y. Jan. 27, 2015) ("Unlike class certification motions under Rule 23, motions for preliminary certification of FLSA collective actions are more easily supported, and are designed to be made prior to discovery.").  Moreover, when evaluating conditional certification, "the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." Adams, 93 F. Supp. 3d at 454 (internal quotation marks omitted).  These conditional certification standards guide the Court's analysis of the Certification Motion.

## B. Conditional Certification Analysis

### i. Plaintiffs' Conditional Certification Contentions

According to named Plaintiff, "[t]his lawsuit challenges a companywide practice that violates the FLSA:  Defendants failed to pay named, opt-in and putative Plaintiffs minimum wage and overtime

---

7  The second stage, known as decertification, only occurs if a defendant, "usually after discovery is virtually complete," moves to decertify a conditionally certified class. Long v. CPI Sec. Sys., Inc., 292 F.R.D. 296, 299 (W.D.N.C. 2013).  At that stage, "courts apply a heightened fact specific standard to the 'similarly situated' analysis." Id.

premium pay for *all* of the hours that they worked above forty (40) in a week since Defendants' policy was to preclude kitchen employees from recording their hours worked." (Docket Entry 15 at 12 (emphasis in original); <u>see also id.</u> at 5 ("Defendants' practice was to prevent kitchen employees from recording their actual hours.").) Plaintiffs request class certification on behalf of all employees affected by this alleged companywide policy. (<u>See, e.g.</u>, Docket Entry 1, ¶ 37 (identifying putative class as "[a]ll current and/or former kitchen employees of Defendants . . . who were not compensated for all of their hours worked, including minimum wage and/or time and one-half for hours worked above forty (40) per week").) In moving for conditional certification, named Plaintiff relies on her own and opt-in Plaintiff's declarations and deposition transcripts.

Plaintiffs' declarations state that Defendants failed to pay them minimum wages and overtime for the hours they worked. (<u>See</u> Docket Entry 15-1, ¶¶ 1, 7, 9-10; Docket Entry 15-2, ¶¶ 1-2, 8.) In their depositions, Plaintiffs provided additional details about their hours and wages, further supporting their minimum wage and overtime contentions. (<u>See, e.g.</u>, Docket Entry 36-1 at 16-21, 28-29, 48; Docket Entry 39-1 at 25-26, 29-30, 32, 34, 37, 45.) In their declarations and depositions, Plaintiffs detail their job duties and identify other workers with similar duties, hours, and compensation experiences. (<u>See, e.g.</u>, Docket Entry 15-1, ¶¶ 3, 8;

18

Docket Entry 15-2, ¶¶ 4, 9; Docket Entry 36-1 at 47-48, 89-98; Docket Entry 39-1 at 14-15, 26, 28-30, 32, 38-41.)

In her declaration and deposition, named Plaintiff states that Defendants did not permit named Plaintiff and other kitchen workers to record their hours. (Docket Entry 15-1, ¶ 6; <u>see, e.g.,</u> Docket Entry 36-1 at 21-22, 89-93.) In his deposition and declaration, opt-in Plaintiff similarly states that, prior to January 2015, Defendants did not permit kitchen workers to record their hours worked. (Docket Entry 15-2, ¶ 6; Docket Entry 39-1 at 48-52.) Opt-in Plaintiff further testified that the clock Defendants used to track workers' hours after January 2015 inaccurately recorded time, resulting in off-the-clock work. (Docket Entry 39-1 at 57 ("What happened was it seemed like the hour was not set correctly, because in the beginning when we would clock in the time seemed too ahead and then when we would clock out the time was behind. So it seemed like it was not set correctly, the times were not set. . . . I would note my time by looking at my cell phone and then when I would clock in at that time I would compare and the hours were not the same.").) Opt-in Plaintiff testified that he reported these inaccuracies to Defendants, who did not correct them. (<u>Id.</u> at 57-58.)

Use of an allegedly inaccurate time clock constitutes another method of implementing Defendants' purported policy of not paying minimum wages and overtime by precluding accurate recording of

hours worked.  See, e.g., Rosario v. Valentine Ave. Disc. Store,
Co., 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011) (explaining that
defendant had "at least two methods of implementing [its] policy"
of not paying minimum wages and overtime); Choimbol v. Fairfield
Resorts, Inc., 475 F. Supp. 2d 557, 564 (E.D. Va. 2006) ("All of
the [p]laintiffs allege that they were victims of [the d]efendants'
predominant policy of withholding minimum wages and overtime pay in
violation of the FLSA.  There is no question that, as required
under the conditional certification analysis, [the p]laintiffs name
Fairfield entities allegedly engaged in a common policy and scheme
which violated the FLSA, whether done by requiring 'deposits' or
withholding of wages.").  This difference in methods does not
subject putative "[p]laintiffs to factually distinct defenses which
would work to undermine the benefit associated with collective
actions, including judicial economy and efficiency by avoiding
multiple lawsuits and repetitious evidence."  Choimbol, 475 F.
Supp. 2d at 564.  Through Plaintiffs' declarations and depositions,
named Plaintiff has therefore "sufficiently shown that the members
of [her] proposed class are similarly situated for purposes of
conditional certification."  Adams, 93 F. Supp. 3d at 454.

### ii.  Defendants' Certification Objections

Nevertheless, Defendants object to certification, for two
primary reasons.  First, Defendants maintain that purported
inconsistencies in Plaintiffs' testimony, as well as Individual

Defendant's allegedly contradictory testimony, render conditional certification improper. (Docket Entry 53 at 6-15.) Defendants' contention in this regard simply "delves too deeply into the merits of the dispute; such a steep plunge is inappropriate for such an early stage of a FLSA collective action. The crux of the matter is whether Plaintiffs have made a modest factual showing that they were victims of a common policy or scheme that contravenes the FLSA. For the reasons articulated above, Plaintiffs have made this modest showing." Essame v. SSC Laurel Operating Co. LLC, 847 F. Supp. 2d 821, 826 (D. Md. 2012).[8]

Second, on the theory that "[o]pt-in Plaintiff's claims for pay periods prior to July 7, 2012 would be [time-]barred" and that Plaintiffs "admit they did not work together at [Vesuvio's] II after June 2012," Defendants contend that "Plaintiffs cannot competently testify about what they observed about the other's work practices within the pertinent period for this case." (Docket Entry 53 at 9.) The date that Plaintiffs last worked together

---

8 Relatedly, Defendants contend that named Plaintiff was not similarly situated to other employees because she purportedly "reported her time in a different manner from that of other employees." (Docket Entry 53 at 11; see also id. ("According to testimony by [Individual Defendant], Defendants required all employees except [n]amed Plaintiff to record their hours in a computerized time clock.").) This contention disregards opt-in Plaintiff's testimony that he (and others) did not use a time clock prior to January 2015. (See Docket Entry 15-2, ¶ 6; Docket Entry 39-1 at 48-52.) The Court does not resolve such factual disputes in the conditional certification analysis. See Adams, 93 F. Supp. 3d at 454.

remains a disputed evidentiary issue (compare id. at 4, 9, with Docket Entry 39 at 31), not subject to resolution at the conditional certification stage, Adams, 93 F. Supp. 3d at 454. Additionally, statute of limitations concerns do not undermine the competency of opt-in Plaintiff's testimony regarding similarities between named Plaintiff and other putative plaintiffs. See, e.g., Lujan v. Cabana Mgmt., Inc., No. 10-CV-755, 2011 WL 317984, at *5 (E.D.N.Y. Feb. 1, 2011) (explaining that, although affidavits from individuals with time-barred claims "may carry less weight than those of recent employees[, n]evertheless, they are probative of employers' wage and hour practices and they may corroborate the claims of more recent violations" (citation omitted)); Fisher v. Michigan Bell Tel. Co., 665 F. Supp. 2d 819, 828 (E.D. Mich. 2009) ("Although the two opt-in [p]laintiff/deponents from the Kalamazoo, and both Detroit call centers may not themselves have viable claims during the statutory period, this does not undermine the fact that [the p]laintiffs have provided relevant evidence supporting the inclusion of these call centers in the class so that other putative class members, who have viable claims, may receive notice of this action." (footnote omitted)). Therefore, Defendants' statute of limitations contention does not preclude conditional certification.

### iii.  Class Definition

Via Plaintiffs' declarations and depositions, named Plaintiff has "sufficiently shown that the members of [her] proposed class

are similarly situated for purposes of conditional certification."
_Adams_, 93 F. Supp. 3d at 454. Accordingly, the Court conditionally
certifies the following class: **All individuals who worked in the
kitchen at Vesuvio's II between March 13, 2012, and the deadline
for the opt-in period, who, at any time during this period, were
not permitted to accurately record their hours worked.**[9]

### C. Notice

"The FLSA manifests a preference that when collective action
certification is granted, a court-controlled notice be provided to
potential putative plaintiffs, rather than permitting unregulated
solicitation efforts to secure joinder by those individuals. The
Court thus holds a managerial responsibility to oversee the joinder
of additional parties to assure that the task is accomplished in an
efficient and proper way." _Adams_, 93 F. Supp. 3d at 456 (internal
quotation marks and citation omitted). In the Certification
Motion, named Plaintiff requests that the Court approve her
proposed notice and consent form and order Defendants (1) to
provide certain information regarding putative plaintiffs to
facilitate the notice process and (2) to post the notice and
consent form "at Defendants' place of business." (Docket Entry 14
at 1.) Defendants object to the proposed notice and consent form,
to producing certain of the requested information regarding

---

9  In light of the potential three-year FLSA statute of
limitations, the class may extend "three years prior to the filing
of this action." _Adams_, 93 F. Supp. 3d at 456 n.11.

putative plaintiffs, and to Plaintiffs' distribution of the notice. (Docket Entry 53 at 15-20.) Defendants ask that the Court "allow the [p]arties to collaboratively propose more just notice and consent forms to th[e] Court for approval." (Id. at 18.) Named Plaintiff agrees to collaborate with Defendants, but asks for leave to submit separate forms if the parties cannot agree on the proposed notice and consent. (See Docket Entry 58 at 3, 9.) The Court will direct the parties to attempt to reach accommodation on these matters.

### IV. Objection

Defendants seek reimbursement from Plaintiffs for certain attorney and paralegal time associated with Defendants' motions to compel and opt-in Plaintiff's rescheduled deposition. (Docket Entry 56 at 2.) Plaintiffs object to these expenses as outside the scope of the Court's Order. (See generally Docket Entry 54.) The Order specified that Plaintiffs' counsel would bear any late cancellation or expedited scheduling expenses for opt-in Plaintiff's deposition and that opt-in Plaintiff and Defendants would equally divide the videoconferencing expenses for that deposition. (Docket Entry 51 at 42; see also id. at 23 n.12 (explaining that Defendants enumerated the expenses they sought to recover as "'the video conferencing expenses at two sites, [in North Carolina] and in Ohio, another full day of translator services, as well as a half day of translator services for August

24

12, 2015 because of the late notice in cancelling [opt-in Plaintiff's] deposition'" (alterations in original) (quoting Docket Entry 32-1 at 6)).) Additionally, the Order explicitly denied expense-shifting regarding Defendants' motions to compel. (Id. at 40.) The disputed expenses do not qualify as either late cancellation and expedited scheduling expenses or videoconferencing expenses. (See Docket Entry 54-12 at 2.) Accordingly, the Court sustains Plaintiffs' Objection to the identified $1,875 in attorney and paralegal fees (see id.).

## CONCLUSION

The record warrants conditional certification as to certain Vesuvio's II kitchen workers, but the parties have not justified their requested communication restrictions. Moreover, Rule 12(f) does not authorize striking the contested affidavits. Finally, Plaintiffs need not pay the disputed expenses.

**IT IS THEREFORE ORDERED** that the Certification Motion (Docket Entry 14) is **GRANTED** insofar as the Court conditionally certifies a class defined as "all individuals who worked in the kitchen at Vesuvio's II Pizza & Grill, Inc. between March 13, 2012, and the deadline for the opt-in period, who, at any time during this period, were not permitted to accurately record their hours worked."

**IT IS FURTHER ORDERED** that the parties attempt to reach accommodation on a notification plan, Notice of Conditional

Certification, Consent to Join Form, and production of contact information for putative plaintiffs. On or before April 1, 2016, the parties shall file a Joint Status Report regarding their efforts to agree on these matters, including their joint or individual proposals for such matters. If the parties agree on the Notice of Conditional Certification and Consent to Join Form, they shall submit, in addition to an English version, a Spanish translation of these jointly proposed documents prepared by a certified Spanish-English translator.

**IT IS FURTHER ORDERED** that Plaintiff's Protective Order Motion (Docket Entry 17) and Defendants' Protective Order Motion (Docket Entry 23) are **DENIED.** Nevertheless, the Court directs all parties and their agents to <u>scrupulously</u> refrain from any communication that is coercive, misleading, or otherwise abusive, including communication that may contradict or undermine the forthcoming court-approved class notice. The parties and their agents must exhibit particular caution in any oral communications with putative plaintiffs.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike (Docket Entry 42) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Objection (Docket Entry 54) is **SUSTAINED.** Plaintiffs need not pay the $1,875 in attorney and paralegal fees identified in Objection Exhibit L (Docket Entry 54-12).

This 14th day of March, 2016.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
